J-A18017-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AMANDA LYNN PAPA | : | |
| | : | |
| Appellant | : | No. 1406 WDA 2019 |

Appeal from the Judgment of Sentence Entered March 27, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0008419-2018

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AMANDA LYNN WASSERMAN | : | |
| | : | |
| Appellant | : | No. 1407 WDA 2019 |

Appeal from the Judgment of Sentence Entered March 27, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0008418-2018

BEFORE:  OLSON, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY NICHOLS, J.:          **FILED: NOVEMBER 12, 2021**

Appellant Amanda Lynn Papa, also known as Amanda Lynn Wasserman, appeals from the judgments of sentence entered on March 27, 2019, at the above-listed docket numbers.  On appeal, Appellant challenges the sufficiency of the evidence underlying her convictions.  After review, we affirm on the basis of the trial court's opinion.

We adopt the trial court's summary of the facts underlying this matter. *See* Trial Ct. Op., 7/20/20, at 9-13. Briefly, Appellant was charged with numerous crimes related to a domestic dispute and her post-arrest behavior at Docket No. 8418. At Docket No. 8419, Appellant was charged with additional crimes in connection with her conduct at an Earth Day celebration in Moon Township, Pennsylvania.

On March 4, 2019, following a non-jury trial, the trial court found Appellant guilty of institutional vandalism and resisting arrest at Docket No. 8418,[1] and resisting arrest, defiant trespass, two counts of disorderly conduct, and two counts of summary harassment at Docket No. 8419.[2] On March 27, 2019, the trial court sentenced Appellant at Docket No. 8418 to a term of eight to ninety days of incarceration with immediate parole, followed by one year of probation for institutional vandalism, and to a consecutive term of one year of probation for resisting arrest. At Docket No. 8419, the trial court sentenced Appellant to two years of probation for resisting arrest, one year of concurrent probation for defiant trespass, ninety days of concurrent probation for harassment, ninety days of concurrent probation for each harassment conviction, and ninety days of concurrent probation for disorderly conduct.

Appellant filed post-sentence motions which were denied on August 13, 2019. On September 12, 2019, Appellant filed a timely notice of appeal at

---

[1] 18 Pa.C.S. §§ 3307(a)(3) and 5104, respectively.

[2] 18 Pa.C.S. §§ 5104, 3503(b)(1), 5503(a), and 2709(a)(1), respectively.

each trial court docket.[3]  Both the trial court and Appellant complied with Pa.R.A.P. 1925.[4]

On appeal, Appellant raises the following issues for review:

1. Whether there was insufficient evidence to convict Appellant of institutional vandalism when the Commonwealth failed to prove Appellant "vandalized, defaced or otherwise damaged" a building when [Appellant] was not found guilty of "desecrating" the building when Appellant urinated on a concrete floor?

2. Whether there was insufficient evidence to convict Appellant of institutional vandalism when the Commonwealth failed to prove Appellant had the requisite *mens rea* to vandalize property when the police handcuffed Appellant to objects for hours resulting in Appellant urinating, and when the videotape evidence failed to show that Appellant tried to destroy a blanket owned by EMS?

3. Whether the Commonwealth disproved that Appellant had a justification to urinate on property, a concrete floor, when she needed to urinate after being handcuffed to objects for hours?

4. Whether there was insufficient evidence to convict Appellant of resisting arrest (at No. CP-02-CR-8418-2018) when the Commonwealth failed to show that the police made a lawful arrest and/or were properly discharging their duty?

5. Whether there was insufficient evidence to convict Appellant of resisting arrest (count 2 at No. CP-02-CR-8419-2018) when

---

[3] Appellant filed a separate appeal at each trial court docket pursuant to ***Commonwealth v. Walker***, 185 A.3d 969 (Pa. 2018) and Pa.R.A.P. 341(a). On October 22, 2019, we consolidated the appeals *sua sponte* pursuant to Pa.R.A.P. 513.

[4] In her Rule 1925(b) statement, Appellant raised additional challenges concerning the sentences imposed.  However, Appellant has abandoned those claims on appeal.  Accordingly, those issues are waived.  ***See Commonwealth v. Sipps***, 225 A.3d 1110, 1112 n.2 (Pa. Super. 2019) (providing that issues raised in a Rule 1925(b) statement, which are not raised and developed in the appellate brief, are waived).

the Commonwealth failed to show that the police made a lawful arrest and/or were properly discharging their duty?

6. Whether there was insufficient evidence to convict Appellant of disorderly conduct (count 4 at No. CP-02-CR-8419-2018) when the Commonwealth failed to demonstrate that Appellant made unreasonable noise when Appellant's actions could not constitute "noise" and/or could not constitute being "unreasonable" noise?

7. Whether the trial court erred in ruling that harassment (count 7 at No. CP-02-CR-8419-2018) was a lesser included offense of aggravated assault (count 1)?

8. Whether the trial court had jurisdiction to convict Appellant of summary harassment (count 7 at No. CP-02-CR-8419-2018) when it was not [charged] in the criminal information?

Appellant's Brief at 10-11 (some formatting altered).

Following our review of the record, the parties' briefs, and the well-reasoned conclusions of the trial court, we affirm on the basis of the trial court's opinion. **See** Trial Ct. Op. at 14-28. We agree with the trial court that there is no merit to the issues raised.[5] **See id.** Accordingly, we affirm.

---

[5] In Appellant's seventh and eighth issue, which the trial court addressed as Appellant's third challenge to her convictions at Docket No. 8419, **see** Trial Ct. Op. at 25, Appellant claims that the trial court erred in convicting her of harassment as opposed to the felony charge of aggravated assault because harassment is not a lesser-included offense. Appellant's Brief at 54. The trial court found this issue waived. Trial Ct. Op. at 26. However, the trial court alternatively noted that it was Appellant's counsel who requested that the trial court "take jurisdiction" and find Appellant "guilty of summaries" only. **Id.** at 25-26. By asking for this reduction, Appellant effectively moved for an amendment to the information. Given that these circumstances demonstrate that Appellant was clearly aware of the conduct for which she was charged, she cannot establish that she was prejudiced by the amendment. **See** Pa.R.Crim.P. 564; **Commonwealth v. Sarvey**, 199 A.3d 436, 453 (Pa. Super. 2018) (reiterating that "the purpose of Rule 564 is to ensure that a

*(Footnote Continued Next Page)*

Judgments of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/12/2021

---

defendant is fully apprised of the charges, and to avoid prejudice by prohibiting the last minute addition of alleged criminal acts of which the defendant is uninformed" (citation omitted and formatting altered)), *appeal denied*, 208 A.3d 62 (Pa. 2019); **see also Commonwealth v. Sinclair**, 897 A.2d 1218, 1224 (Pa. Super. 2006) (holding that amendment of the information is permissible on the day of trial if there is no prejudice). Therefore, even if properly preserved, Appellant would not be entitled to relief on this issue.

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY,
PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA,          CRIMINAL DIVISION

        APPELLEE,

        V.

AMANDA LYNN WASSERMAN,                  CC NO.: 201808418 and
(AKA) AMANDA LYNN PAPA                  201808419

        APPELLANT.

OPINION

BORKOWSKI, J.

PROCEDURAL HISTORY

Appellant was charged by criminal information (CC 20180418) with one count each of institutional vandalism[1] and resisting arrest. [2]  At CC 20180419 Appellant was charged with one count each of aggravated assault-bodily injury-police/fire;[3] resisting arrest;[4] defiant trespass;[5] harassment; [6] and two counts of disorderly conduct.[7]

---

[1] 18 Pa. C.S. § 3307(a)(3).
[2] 18 Pa. C.S. § 5104.
[3] 18 Pa. C.S. § 2702(a)(3).
[4] 18 Pa. C.S. § 5104.
[5] 18 Pa. C.S. §3503(b)(1)(i).
[6] 18 Pa. C.S. §2709(a)(1).
[7] 18 Pa. C.S. §5503(a)(1) and (2).

2

On March 4, 2019, Appellant proceeded to a non-jury trial, at the conclusion of which Appellant was found guilty of institutional vandalism and resisting arrest at CC 201808418 and resisting arrest, defiant trespass, disorderly conduct (unreasonable noise), disorderly conduct (engage in fighting), and two counts of summary harassment at CC 20180419.

On March 27, 2019, Appellant was sentenced at both cases by the Trial Court as follows:

At CC 201808418:

Count one: institutional vandalism- eight to ninety days incarceration, paroled forthwith, one-year probation, undergo a mental health evaluation, continue treatment, no contact with the victims, and refrain from directing offensive or derogatory social media posts towards any parties or entities involved;

Count two: resisting arrest - one-year probation to be served consecutive to the period of probation imposed at count one with the same conditions imposed at count one.

At CC 201808419:

Count two: resisting arrest- two years' probation, undergo a mental health evaluation, continue treatment, no contact with the victims, not to be within 1,000 yards of Robin Hill Park, Moon Twp., PA, and refrain from directing offensive or derogatory social media posts towards any parties or entities involved;

3

Count three: defiant trespass- one-year concurrent probation and the same conditions imposed at count two;

Count five: harassment- 90 days concurrent probation and same conditions imposed at count two;

Count six: disorderly conduct-90 days concurrent probation and same conditions imposed at count two;

Count seven: harassment- 90 days concurrent probation and same conditions imposed at count two.

On April 8, 2019, Appellant filed post-sentence motions, which were denied on August 13, 2019.

This timely appeal follows.

## STATEMENT OF ERRORS ON APPEAL

Appellant's claims at both cases are set forth below exactly as Appellant presented them:

### CC: 201808418

I.    Whether there was sufficient evidence to convict Defendant of institutionalized vandalism when the Commonwealth failed to prove Defendant "vandalized, defaced or otherwise damaged" a building when Defendant was not found guilty of "desecrating" the building when Defendant urinated on a concrete floor? *See* 18 Pa.C.S. § 3307(a)(3) (must be building). *See* 18 Pa.C.S. § 3307(b) (grading of crime is misdemeanor of second degree, but only when Commonwealth proves desecration the crime is graded as felony of third-degree). (TT 106-107)

II.   Whether there was sufficient evidence to convict Defendant of institutionalized vandalism where the Commonwealth failed to prove Defendant had the requisite *mens rea* to vandalize property when the police handcuffed Defendant to objects for hours resulting in Defendant urinating, and when the videotape evidence failed to show that Defendant tried to destroy a blanket owned by EMS? (TT 106-107)

III.  Whether there was sufficient evidence to convict Defendant of institutionalized vandalism when there was insufficient proof that property was vandalized when the police handcuffed Defendant to objects resulting in Defendant urinating on a concrete floor, and when the videotape evidence failed to show that Defendant tried to destroy a blanket owned by EMS? (TT 106-107, 122-123).

5

IV. Whether the Commonwealth disproved that Defendant had justification to urinate on property, a concrete floor, when she needed to urinate after being handcuffed to objects for hours? (TT 105, 106-107)

V. Whether there was sufficient evidence to convict Defendant of institutionalized vandalism when the Commonwealth failed to prove that a blanket and/or chair was a building owned and operated by the Police Department when the blanket was personal property (a section not charged by the Commonwealth) owned by EMS? 18 Pa.C.S. § 3307(a)(3). Note: Defendant was not charged with 18 Pa.C.S. § 3307(a)(5).

VI. Whether there was sufficient evidence to convict Defendant of resisting arrest when the Commonwealth failed to show that the police made a lawful arrest and/or were properly discharging their duty? (TT 91-92)

VII. Whether the sentencing court abused its discretion by ordering Defendant to "refrain from directing offensive or derogatory social media posts towards any parties [or] entities involved" as it is expansive to becoming improper and/or vague? *See* post-sentencing motions, *See* post-sentencing motions, ¶ 11(E).

VIII. Whether the sentencing court abused its discretion by ordering Defendant to have no contact with the victims or any parties [or] entities as it is unconstitutionally overbroad and/or vague? *See* post-sentencing motions, ¶ 11(F).

IX. Whether the trial court erred in applying a condition that Defendant is banned from contact with the police does not

6

provide for an emergency exception and as such is unconstitutionally overbroad and vague? *See* post-sentencing motions, ¶ 11(F).

## CC: 201808419

I.    Whether there was sufficient evidence to convict Defendant of resisting arrest (count 2) when the Commonwealth failed to show that the police made a lawful arrest and/or were properly discharging their duty?

II.    Whether there was sufficient evidence to convict Defendant of disorderly conduct (count 4) when the Commonwealth failed to demonstrate that Defendant made unreasonable noise when the Defendant's actions could not constitute "noise" and/or could not constitute being "unreasonable" noise?

III.    Whether the trial court erred in ruling that harassment (count 7) was a lesser included offense of aggravated assault (count 1)? Verdict Transcript, at page 3. *See* post-sentencing motions, ¶ I citing *Commonwealth v. Townley*, 722 A.2d 1098, 1099 (Pa. Super. 1998).

IV.    Whether the sentence of one (1) year of probation for defiant trespass (count 3) was illegal after the court specifically graded the charge as a summary offense? *See* post-sentencing motions, ¶ 11(G) citing page 3 of the Verdict Transcript.

V.    Whether the sentence of one (1) year of probation for defiant trespass (count 3) was illegal when the Commonwealth failed to show that an owner or authorized person told Defendant to leave? *Apprendi v. New Jersey*, 530 U.S. 466 (2000)

7

VI. Whether the sentence of one (1) year of probation for disorderly conduct (count 4)) was illegal after the trial court specifically graded the charge as a summary offense? *See* page 3 of the Verdict Transcript.

VII. Whether the sentence of one (1) year of probation for disorderly conduct (count 4) was illegal when the Commonwealth failed to show that the Defendant had the intent to cause substantial harm or serious inconvenience or persisted in disorderly conduct after reasonable warning or request to desist? See 18 Pa.C.S. § 5503(b). *See also Apprendi v. New Jersey*, 530 U.S. 466 (2000). The court said it was a summary offense not a misdemeanor (page 3 of Verdict Transcript).

VIII. Whether the sentencing court abused its discretion by violating the First Amendment of the United States Constitution as well as similar provisions of the Pennsylvania Constitution when the sentencing court issued a written order banning Defendant from the Robin Hill Park (a public park) for the entire time while she is on probation and possibly afterward? *See* post-sentencing motions, ¶ 11(D).

IX. Whether the sentencing court abused its discretion by ordering Defendant to "refrain from directing offensive or derogatory social media posts towards any parties [or] entities involved" as it is expansive to becoming improper and/or vague? *See* post-sentencing motions, ¶ 11(E).

X.    Whether the sentencing court abused its discretion by ordering Defendant to have no contact with the victims or any parties [or] entities as it is unconstitutionally overbroad and/or vague? *See* post-sentencing motions, ¶ 11(F).

XI.   Whether the trial court erred in applying a condition that Defendant is banned from contact with the police does not provide for an emergency exception and as such is unconstitutionally overbroad and vague? *See* post-sentencing motions, ¶ 11(F).

## FINDINGS OF FACT

## 201808418

On May 30, 2018, at approximately 5:42 p.m., Officers Robert Litterini and Nicholas Derusso, of the Coraopolis Police Department, responded to a domestic violence call at a residence Appellant shared with her husband, Garrett Wasserman. (T.T. 85-86, 106, 108).[8] Appellant's father had called due to concerns for his daughter after finding her intoxicated and agitated due to the domestic dispute that had occurred between her and her husband. Garrett Wasserman was not present when the police initially arrived, but he did return while the police were there. Garrett was disheveled, scratched, and indicated he and Appellant had a fight and that he was afraid and left the residence. (T.T. 88). Garrett granted the officers

---

[8] The designation "T.T." refers to the Non-jury Trial Transcript, dated March 4, 2019.

9

access to the residence where they immediately observed a broken TV, broken computers, house plants and lamps knocked over, and shattered glass on the floor. (T.T. 89) Upon announcing their presence, the officers observed Appellant exit the bedroom at the top of the steps. Upon informing her why they were called, Appellant indicated she was fine, that she had had a domestic with her husband, and did not want to see him. (T.T. 90). Appellant appeared distraught and refused to come down and be checked for injuries. She returned to her bedroom and locked the door. Due to the fact that a domestic dispute had occurred, the distraught state of Appellant, and having been informed by her father that there were knives in the house, the officers then proceeded upstairs and forced the bedroom door open. (T.T. 92). They removed Appellant from the bedroom, handcuffed her, and informed her she was under arrest for the assault of her husband. Appellant resisted being handcuffed and further resisted by stiffening her legs in front of her, causing potential danger to the arresting officers, when being taken down the stairs. (T.T. 93-94). Upon her arrival at the police station, Appellant was taken to an interview room to be checked by medics, who cleared her, and she was then moved to a holding cell. (T.T. 95-96).

The arresting officers had to leave the station for another call but were called back by dispatch after Appellant attempted to flood the holding cell by stuffing a blanket in the toilet. Officer Derusso went to Appellant's cell and removed the wet

10

blanket from her. He further noted that the floor was wet. (T.T. 111-112). Appellant was removed from the holding cell and taken to an interview room where there was a desk and a chair. Appellant was placed in the chair with both arms handcuffed to the arms of the chair. Officers had to remove the table in the room due to Appellant kicking it and continued erratic and aggressive behavior. (T.T. 113-117).

Video surveillance showed that while in the interview room, Appellant kicked the chair, jumped up and down, kicked the wall repeatedly, bit her wrists causing blood and bite marks on her wrists, took her clothes off, urinated on the floor, hit her head on the chair, and also urinated on the chair. As a result of Appellant's behavior, medics were called to the station for a second time to access and treat Appellant's self-inflicted injuries. (T.T. 113-117). Appellant's actions caused damage to the rooms which required a biohazard cleaning service to come into clean them. (T.T. 118).

Appellant was charged as noted hereinabove.

## 201808419

On April 22, 2018, there was an Earth Day celebration at Robin Hill Park in Moon Township. Charles Anthony, along with his girlfriend, were volunteering at the Chevron booth handing out backpacks and chalk to the children who came to the booth. (T.T. 8-9). Appellant and her husband were at the park gathering signatures

11

for Garrett's election petition as a Green Party nominee for Pennsylvania's 45th Legislative District. (T.T. 54-55). During their movement through the crowds, Appellant noticed the Chevron booth and became agitated at their presence and activity. Appellant entered their booth and confronted Anthony regarding Chevron's presence at the event. Anthony, due to Appellant's aggressive demeanor and verbal abuse, waited until the child and mother who were present in the booth left before answering her. Anthony informed Appellant he was there celebrating Earth Day and handing out T-shirts and backpacks to the children in attendance. Appellant became enraged and accused Anthony of handing out propaganda to children. (T.T. 10-11). Appellant's aggression escalated when she grabbed a stack of backpacks and attempted to run out of the booth with them. Anthony grabbed the backpacks and a struggle ensued in which Appellant hit Anthony in the chest.

The Moon Township Police responded to Appellant's disorderly, disruptive, and assaultive conduct. Prior to the arrival of the police, Anthony attempted to calmly talk to Appellant at which time she began yelling that it "was her decision to educate the children." She then ran back in the booth, grabbed items off the ground, and sat defiantly on their table in the booth in an obvious attempt to disrupt the activities of Anthony and his colleague. (T.T. 12-14).

Sergeant Phillis arrived shortly thereafter and spoke with Appellant in an attempt to calm her. Sergeant Phillis, along with other employees of the park had

12

Appellant step out of the booth, but she forced her way back in the booth and began grabbing onto the tent support pole and stepping on the table. (T.T. 14-15, 30). Appellant continued to enter and exit the booth swearing. Appellant was told to leave the park by the police, but she refused to comply, swinging her arms hitting Officer David Stitch in the face. The blow knocked off the officer's glasses but did not cause serious bodily injury. (T.T. 16, 26, 30, 45). Officers were forced to take Appellant to the ground in an attempt to subdue her, but she continued kicking the officers, screaming, and swearing. Appellant was eventually subdued and taken into custody, but she continued to be physically combative during the arrest. Appellant, at one point, grabbed at Officer Graziani's magazine and firearm, as well as his radio. (T.T. 16, 30-31, 45, 51).

A camera located inside the Chevron tent captured much of the incident. (T.T. 34-35). Subsequent to her arrest, Appellant participated in an interview by a local news station wherein she proudly admitted to resisting arrest. (T.T. 37).

Appellant was charged as noted hereinabove.

## DISCUSSION

### 201800008418

### I.

Appellant alleges in her first claim at CC 201800008418 that there was insufficient evidence "to convict [Appellant] of institutionalized vandalism when the Commonwealth failed to prove [Appellant] 'vandalized, defaced or otherwise damaged' a building when [Appellant] was not found guilty of 'desecrating' the building when [Appellant] urinated on a concrete floor? See 18 Pa.C.S. § 3307(a)(3) (must be building). See 18 Pa.C.S. § 3307(b) (grading of crime is misdemeanor of second degree, but only when Commonwealth proves desecration the crime is graded as felony of third-degree)." This claim is without merit.

The standard of review for sufficiency of the evidence claims has been stated thusly:

> The standard we apply when reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element

14

of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence.

*Commonwealth v. Gray*, 867 A.2d 560, 567 (Pa. Super. 2005). The subsection of the institutional vandalism statute under which Appellant was convicted provides that:

> (a) Offenses defined.--A person commits the offense of institutional vandalism if he knowingly desecrates, as defined in section 5509 (relating to desecration or sale of venerated objects), vandalizes, defaces or otherwise damages:... (3) any school, educational facility, community center, municipal building, courthouse facility, State or local government building or vehicle or juvenile detention center;...

18 Pa. C.S. § 3307(a)(3).

The statute further provides that the offense is graded as a misdemeanor of the second degree unless the act constitutes "desecration," then the offense is graded as a felony of the third degree. 18 Pa. C.S. § 3307(b); *see also Commonwealth v. Perdue*, 564 A.2d 489 (Pa.Super. 1989).

Appellant's claim as set forth is confusing at best in that Appellant is misguided as to the grading of the offense for which she was convicted. Appellant argues that she was not found guilty of "desecration" when she urinated on the concrete floor so the Commonwealth failed to prove Appellant "vandalized, defaced or otherwise damaged" a building for purposes of the charge of institutional

15

vandalism. Appellant was only charged with, and eventually convicted of, the misdemeanor in the second-degree grading of the offense. As such, the Commonwealth did not need to prove "desecration" in order for Appellant to be convicted under 18 Pa. C.S. § 3307(a)(3).

The evidence presented at trial showed that Appellant knowingly vandalized, defaced, and caused damage to two separate rooms of the police station, a municipal building as defined by the statute. Specifically, Appellant acted intentionally when she: (1) attempted to flood the holding cell; (2) urinated on the floor of the interview room, as well as repeatedly kicking a table, chair, and wall while in the interview room; and (3) jumping on the chair, hitting her head on the chair, and also urinating on the chair in the interview room. All of the conduct in the interview room was captured on video surveillance. (T.T. 113-117). Screenshots from the video depicting Appellant's behavior, which were admitted as exhibits at trial, showed her deliberate conduct of pulling her pants down to urinate on the chair and floor. (T.T. 115-116). As such, Appellant's abhorrent behavior did, in fact, cause damage, which required a biohazard cleaning service to come into clean the rooms. (T.T. 118). *Perdue*, at 497 (holding that defendant was properly convicted of institutional vandalism as a result of finding the damage inflicted by defendant was intentional and not merely reckless or negligent).

16

Viewing all the evidence admitted at trial in the light most favorable to the Commonwealth, there was sufficient evidence to prove the elements of institutional vandalism. As such, this claim is without merit.

## II.

Appellant alleges in her second claim at CC 201800008418 that there was insufficient evidence "to convict [Appellant] of institutionalized vandalism where the Commonwealth failed to prove [Appellant] had the requisite *mens rea* to vandalize property when the police handcuffed [Appellant] to objects for hours resulting in [Appellant] urinating, and when the videotape evidence failed to show that [Appellant] tried to destroy a blanket owned by EMS?" This claim is without merit.

As stated hereinabove, the acts of Appellant at the police station clearly established her deliberate and intentional act of pulling her pants down and urinating on the floor, which was the basis for the institutional vandalism charge. *Perdue*, at 497 (holding that institutional vandalism statute involves intentional conduct). While Appellant was handcuffed at the time, that does not negate her clear intent to vandalize the property. There was no evidence or indication that Appellant ever requested to use the bathroom prior to urinating; rather, this was part of the pattern of aggressive and destructive conduct that Appellant demonstrated over the course

17

of several hours. Furthermore, despite Appellant's contention to the contrary, the evidence did establish that she attempted to damage/destroy the blanket provided by EMS which she used to clog the toilet in the holding cell causing toilet water to flood the holding cell. (T.T. 111-112). This claim is without merit.

## III.

Appellant alleges in her third claim at CC 201800008418 that there was insufficient evidence "to convict [Appellant] of institutionalized vandalism when there was insufficient proof that property was vandalized when the police handcuffed [Appellant] to objects resulting in [Appellant] urinating on a concrete floor, and when the videotape evidence failed to show that [Appellant] tried to destroy a blanket owned by EMS?" This claim is without merit.

As presented at trial and stated hereinabove, Appellant's intentional act of urinating on the floor was the basis for the institutional vandalism charge and not her act of damaging the EMS blanket. As such, there was sufficient evidence to convict Appellant of institutional vandalism and her claim is without merit.

## IV.

Appellant alleges in her fourth claim at CC 201800008418 that the Commonwealth failed to disprove "that [Appellant] had justification to urinate on

18

property, a concrete floor, when she needed to urinate after being handcuffed to objects for hours?" This claim is without merit.

A justification defense is one in which the actor believes his conduct is necessary to avoid "a harm or evil to himself or to another… if: (1) the harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged." 18 Pa.C.S.A. §503(a)(1); *see also Commonwealth v. Billings*, 793 A.2d 914, 916 (Pa. Super. 2002). However, Appellant's intentional acts as captured on surveillance video and admitted at trial clearly evidence she was not justified in her acts of urinating on the floor. Appellant had ample opportunity to use the bathroom in her cell prior to her attempts to flood it, nor was there any indication that Appellant ever made a request to use the bathroom prior to urinating on the floor. The totality of the circumstances here clearly indicate that this conduct was not a matter of necessary bodily function, but part of Appellant's destructive and erratic behavior that night. As such, Appellant was not justified in urinating on the floor and her claim is without merit.

## V.

Appellant alleges in her fifth claim at CC 201800008418 that there was insufficient evidence "to convict [Appellant] of institutionalized vandalism when the Commonwealth failed to prove that a blanket and/or chair was a building owned and

19

operated by the Police Department when the blanket was personal property (a section not charged by the Commonwealth) owned by EMS?" This claim is without merit.

As presented at trial and stated hereinabove, Appellant's intentional act of urinating on the floor was the basis for the institutional vandalism charge and not her act of damaging the EMS blanket. As such, there was sufficient evidence to convict Appellant of institutional vandalism and her claim is without merit.

VI.

Appellant alleges in her sixth claim at CC 201800008418 that there was insufficient evidence "to convict [Appellant] of resisting arrest when the Commonwealth failed to show that the police made a lawful arrest and/or were properly discharging their duty?" This claim is without merit.

The resisting arrest statute states in pertinent part: "A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance." 18 Pa.C.S.A. §5104.

At trial the evidence presented showed that officers were called to Appellant's home for a domestic violence call where they encountered Appellant. Appellant

20

appeared distraught and was uncooperative with their requests to come downstairs to be checked out and questioned. Instead, Appellant locked and barricaded herself in her bedroom, which required the officers to force her door open, physically remove her from the bedroom, and place her under arrest for the assault on her husband. At that point Appellant became combative and resisted being handcuffed. She then stiffened her legs in an effort to resist being taken down the steps by officers, thereby creating a substantial risk of bodily injury to the officers. As a result of her combativeness, the officers had to forcefully take her down the steps. (T.T. 90-93).

As such, there was sufficient evidence to prove that Appellant's actions were intentional and that she was trying to prevent the officers from effectuating her lawful arrest; her actions created a substantial risk of bodily injury to the officers; and her actions required them to exert substantial force to overcome her resistance. *See Commonwealth v. Miller*, 475 A.2d 145, 147 (Pa.Super. 1984)(holding that defendant had resisted arrest when during the course of his lawful arrest he struggled and flailed his arms to prevent being handcuffed and stiffened his body in a manner which required the use of physical force to effectuate the arrest.)

As such, Appellant's claim is without merit.

21

I.

Appellant alleges in her first claim at CC 201800008419 that there was insufficient evidence "to convict [Appellant] of resisting arrest (count 2) when the Commonwealth failed to show that the police made a lawful arrest and/or were properly discharging their duty?" This claim is without merit.

The standard of review for sufficiency of the evidence claims has been stated hereinabove. *See Gray*, 867 A.2d 560, 567 (Pa. Super. 2005). Also defined previously, "A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance." 18 Pa.C.S.A. §5104. In order to be convicted of resisting arrest, the underlying arrest must be lawful, *i.e.* probable cause must exist to arrest the defendant. *Commonwealth v. Jackson*, 924 A.2d 618, 620 (Pa. 2007).

The evidence presented at trial, which was previously set forth hereinabove,[9] established that Appellant's assaultive, disruptive, and disorderly actions toward civilians and police coupled with her refusal to remove herself from the Chevron

---

[9] See Findings of Fact, pp. 11-13.

booth and the park established that her subsequent arrest was lawful. Her behavior in assaulting and fighting with the police, which included swearing, yelling, kicking officers, and hitting Officer Stitch in the face, requiring three officers to subdue her, established her intent to prevent the officers from effectuating her lawful arrest. Her actions unambiguously created a substantial risk of bodily injury to the officers which required a substantial use of force to overcome her resistance. As such, there was sufficient evidence to support a lawful arrest and as such, there was sufficient evidence to convict Appellant of resisting arrest. *See Commonwealth v. Coleman*, 19 A.3d 1111, 1118 (Pa.Super. 2011)(holding that the evidence was sufficient to support defendant's conviction for resisting arrest when defendant struck the officer while cursing and yelling at the officer in his attempt to prevent being handcuffed during a lawful arrest.)

Appellant's claim is without merit.

## II.

Appellant alleges in her second claim at CC 201800008419 that there was insufficient evidence "to convict [Appellant] of disorderly conduct (count 4) when the Commonwealth failed to demonstrate that [Appellant] made unreasonable noise when the [Appellant's] actions could not constitute 'noise' and/or could not constitute being 'unreasonable' noise?" This claim is without merit.

23

The subsection of the disorderly conduct statute under which Appellant was charged provides that:

> (a) Offense defined.--A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:... (2) makes unreasonable noise;...

18 Pa.C.S.A. §5503 (a)(2).

What constitutes the *actus reus* of "unreasonable noise" for purposes of disorderly conduct is determined by the volume of speech, not its content. *Commonwealth v. Maerz*, 879 A.2d 1267, 1269 (Pa.Super. 2005). Further, the Superior Court has stated that the Court looks to the language content only to infer whether the speaker intended to cause public annoyance, alarm, etc. *Id.* Pennsylvania law has defined "unreasonable noise" as "not fitting or proper in respect to the conventional standards of organized society or a legally constituted community." *Commonwealth v. Gilbert*, 674 A.2d 284, 287 (Pa.Super. 1996); *citing Commonwealth v. Mastrangelo*, 414 A.2d 54, 58, (Pa. 1980).

The evidence presented at trial established that Appellant was repeatedly screaming at a level that attracted many bystanders who were attending the Earth Day celebration. The screaming included vulgarity and occurred in a crowded public park with many children present. Her conduct clearly rose to the level of "unreasonable noise" as defined by Pennsylvania law, and the content was clearly

24

intended to cause public annoyance and/or alarm. As such, the evidence was sufficient to sustain the conviction for disorderly conduct. *See Commonwealth v. Hughes*, 410 A.2d 1272, 1274 (Pa.Super. 1979)(holding that there was sufficient evidence to sustain defendant's conviction for disorderly conduct where defendant shouted threats and obscenities at members of the general public and police with reckless disregard of the clear risk of public inconvenience, annoyance, or alarm).

Appellant's claim is without merit.

## III.

Appellant alleges in her third claim at CC 201800008419 that "the trial court erred in ruling that harassment (count 7) was a lesser included offense of aggravated assault (count 1)? Verdict Transcript, at page 3. *See* post-sentencing motions, ¶ I citing *Commonwealth v. Townley*, 722 A.2d 1098, 1099 (Pa. Super. 1998)." This claim is meritless for two reasons.

First, Appellant, through Trial Counsel, specifically requested that the Trial Court consider summary level offenses instead of the felony level offense charged. On March 4, 2019, Trial Counsel stated:

> All I'm saying is if Your Honor is inclined to feel that there is criminal activity here, which I believe hasn't amounted to criminal activity, if you believe there has, I'd ask you take jurisdiction and find her guilty of summaries. That might fit this

25

type of crime. I don't believe this level of charge has been made out here beyond a reasonable doubt.

(T.T. 80). Consequently, the Trial Court was acting in accord with Appellant's motion in that regard.

Second, in order to preserve an issue for appellate review, the defendant must make a timely and specific objection at the appropriate stage before the trial court. Failure to do so, constitutes waiver of the issue. *See In re: S.C.B.*, 990 A.2d 762, 767 (Pa.Super. 2010). The Trial Court's decision to find Appellant guilty of summary harassment in lieu of a felony aggravated assault was meant to extend leniency to Appellant and neither she nor Trial Counsel placed an objection on the record at the time of the Trial Court's decision. Specifically, the Trial Court stated:

> Although I do believe that there's a factual basis for each of the charges, I'm not going to enter a conviction on a felony level offense for your conduct that day. But I am going to enter a verdict consistent with my perception of the evidence, and the credible evidence and unbiased evidence, from my perception, that was presented. At count 1, you'll be convicted of a summary level offense of harassment as to striking Officer Stitch.

(S.T. 3-4).[10] As such, Appellant's failure to object at the appropriate stage, i.e. verdict/sentencing, has waived the issue for appeal.

---

[10] The designation "S.T." refers to the Sentencing Transcript, dated March 27, 2019.

## MOOT CLAIMS

Appellant has raised several claims related to the sentences imposed at both cases. Specifically, at CC 20180008418, Appellant raised sentence related claims at VII, VIII, and IX; and at CC 20180008419, claims IV, V, VI, VII, VIII, IX, X, and XI. These issues are moot.

As stated previously, on March 27, 2019, the Trial Court sentenced Appellant to a period of time served of eight days, paroled forthwith, with an aggregate two-year probationary period to follow. Additionally, the Trial Court imposed certain conditions which included a mental health evaluation, continued treatment, no contact with the victims, refraining from directing offensive or derogatory social media posts towards any parties or entities involved, and was barred from Robin Hill Park, Moon Twp., Pa on Earth Day. (S.T. 7-9). On January 31, 2020, the Trial Court terminated Appellant's probation and closed the cases. As such, Appellant is no longer serving a sentence for these two cases.

As the Superior Court has stated, "An issue can become moot during the pendency of an appeal due to an intervening change in the facts of the case or due to an intervening change in the applicable law." *In re D.A.*, 801 A.2d 614, 616 (Pa.Super. 2002) *(quoting In re: Cain*, 590 A.2d 291, 292 (1991). Further, "An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect." *Johnson v. Martofel*, 797 A.2d 943, 946 (Pa.Super.

27

2002). As Appellant is no longer serving a sentence and is no longer subject to the conditions imposed by the Trial Court at the time of sentencing, there is no order on appeal that could be issued which would have any legal force or effect as to her sentence. As such, these issues are now moot.

## CONCLUSION

Based upon the foregoing, the judgments of sentence imposed by this Court should be affirmed.

By the Court,

DATE: 7/20/20      _____; J.

Edward J. Borkowski