J-S63020-19

2019 PA Super 370

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MATTHEW JEFFREY SIPPS | : | |
| | : | |
| Appellant | : | No. 1872 EDA 2018 |

Appeal from the Judgment of Sentence Entered January 18, 2018
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0002590-2017

BEFORE:   GANTMAN, P.J.E., MURRAY, J., and STRASSBURGER, J.[*]

OPINION BY MURRAY, J.:                    **FILED DECEMBER 31, 2019**

Matthew Jeffrey Sipps (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of concealment of the whereabouts of a child, corruption of minors, and patronizing a victim of sexual servitude.[1]  After careful review, we affirm.

On appeal,  Appellant presents two issues for our review:

1. Whether the evidence at trial was insufficient to support [Appellant's] conviction of Count 3, Patronizing a victim of sexual servitude [18 Pa.C.S. § 3013], where the government failed to prove beyond a reasonable doubt that [Appellant] engaged in a sex act or performance with another individual knowing that the act or performance is the result of the person being a victim of human trafficking?

2. Whether the evidence at trial was insufficient to support [Appellant's] conviction of Count 1, Concealment of whereabouts of a child, 18 Pa.C.S. § 2909(a), where the

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2909, 6301, and 3013.

government failed to prove beyond a reasonable doubt that [Appellant] removed a child from her known place of residence with the intent to conceal the child's whereabouts from her parent or guardian, caused the child to be removed from her known place of residence, prevented the child from returning or being returned to her known place of residence, or failed to return a child to her known place of residence when the child's parent or guardian had a reasonable expectation that [Appellant] would return the child?

Appellant's Brief at 6.[2]

Preliminarily, we address the trial court's contention that Appellant's sufficiency issues "should be deemed waived" because Appellant "has not cogently identified the mandated elements of the crimes." Trial Court Opinion, 12/26/18, at 7. Referencing both case law and Appellant's "wholesale lack of specificity," the court stated that it "must guess" at Appellant's "generalized sufficiency claims." *Id.* at 8. However, despite its consternation with Appellant's Rule 1925(b) concise statement, the trial court authored a comprehensive, articulate and impressive opinion, which we reference *infra*.

In response to the trial court's assertion of waiver, Appellant also notes that the trial court "addressed the merits of the question[s] at length." Appellant's Brief at 17. For its part, the Commonwealth does not address

_____

[2] Although Appellant raised seven issues in his Pa.R.A.P. 1925(b) concise statement, we need only address the two issues presented in his appellate brief. *See Commonwealth v. Bullock*, 948 A.2d 818, 823 (Pa. Super. 2008) (Issues are waived when they are raised in a 1925(b) statement, but not raised and developed in appellate brief).

waiver, but argues against the merits of Appellant's sufficiency claims. **See generally**, Commonwealth Brief at 4-17.

This Court has held that we may find waiver where a concise statement is too vague. **See Commonwealth v. Hansley**, 24 A.3d 410, 415 (Pa. Super. 2011). "When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review." **Commonwealth v. Dowling**, 778 A.2d 683, 686 (Pa. Super. 2001) (citation omitted). "A Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement." **Id.** at 686-87. We have stated:

> If Appellant wants to preserve a claim that the evidence was insufficient, then the 1925(b) statement needs to specify the element or elements upon which the evidence was insufficient. This Court can then analyze the element or elements on appeal. [Where a] 1925(b) statement [ ] does not specify the allegedly unproven elements[,] ... the sufficiency issue is waived [on appeal].

**Commonwealth v. Williams**, 959 A.2d 1252, 1257 (Pa. Super. 2008).

Here, although the trial court has advocated waiver, we find that the two sufficiency issues Appellant raises on appeal were not so vaguely stated in the Rule 1925(b) statement so as to compel waiver. For example, in his first issue, Appellant's assertion reflects his first question on appeal:

> The evidence at trial was insufficient to support [Appellant's] conviction of Count 3, Patronizing a victim of sexual servitude [18 Pa.C.S. § 3013], where the government failed to prove beyond a reasonable doubt that [Appellant] engaged in a sex act or performance with another individual knowing that the

act or performance is the result of the person being a victim of human trafficking?

Appellant's Rule 1925(b) Statement, 7/20/18, at 1.

While Appellant's Rule 1925(b) statement may be flawed, the trial court — after discussing waiver — has provided a thoughtful analysis rejecting the sufficiency claims on the merits. On this record, we, like the trial court, proceed to review the merits of Appellant's sufficiency claims.

It is well-settled that:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Reed*, 216 A.3d 1114, 1119 (Pa. Super. 2019) (citation omitted).

Appellant first claims the evidence was insufficient to support his conviction of patronizing a victim of sexual servitude. The relevant statute reads:

- 4 -

**(a) Offense defined.--**A person commits a felony of the second degree if the person engages in any sex act or performance with another individual knowing that the act or performance is the result of the individual being a victim of human trafficking.

18 Pa.C.S.A. § 3013.  By law, human trafficking occurs when a person:

(1)    recruits, entices, solicits, harbors, transports, provides, obtains or maintains an individual if the person knows or recklessly disregards that the individual will be subject to involuntary servitude; or

(2)    knowingly benefits financially or receives anything of value from any act that facilitates any activity described in paragraph (1).

18 Pa.C.S.A. § 3011.

Appellant argues that "the jury used surmise and conjecture to convict because testimony from the witness stand did not support" his patronizing a victim of human trafficking conviction.  Appellant's Brief at 12.  Appellant concedes that he had sex with the complainant, satisfying the first element of the offense, but as to the second element, claims the evidence did not support a finding that he **knew** the complainant was being trafficked.  Appellant states that the Commonwealth evidence "proved only at best [that Appellant] engaged in sex with a young runaway."  *Id.* at 14.  Appellant continues:

Nowhere in the record does evidence appear Appellant was aware that complainant was from Rhode Island, that she met Ray Justis through a website or that Justis transported her to New Jersey. Testimony does not bear this out.

Appellant's Brief at 15.  This argument is specious.

As noted, the trial court addressed the merits of this claim.  Although at this writing there are no published decisions specifically discussing the

- 5 -

sufficiency of the evidence as it pertains to a conviction of patronizing a victim of sexual servitude, the trial court nonetheless offered a detailed record-based analysis with citation to related legal authority. Specific to Appellant's contention that he lacked knowledge that the "young runaway," *i.e.*, the complainant, V.M., was the victim of human trafficking, the court explained:

> At trial, V.M. testified she had sexual intercourse with [Appellant] on three (3) occasions stemming from her being a "worker" for Ray Justis and these interactions were subsequent and in response to Ray posting an advertisement for her on Backpage.com, and in each such instance [Appellant] paid Ray five hundred ($500.00) dollars per liaison. [Appellant], after taking V.M. to his home, continued to have with [V.M.] repeated sexual intercourse. N.T., 9/6/17, pp. 93-96, 99, 100, 114. *See also* Commonwealth Exhibit C-1 – Backpage.com Advertisement for V.M. There was clearly legally sufficient evidence for the jury to have determined that [Appellant] engaged in sexual acts with V.M. N.T., 9/6/17, pp. 99, 100, 114. *See also* 18 Pa.C.S. § 3013(a).
>
> The sole remaining issue is thus whether the evidence at trial was as a matter of law sufficient to demonstrate that [Appellant] knew his repeatedly having intercourse with V.M. was "the result of [V.M.] being a victim of human trafficking." *See* § 3013. *See also* 18 Pa.C.S. 302(a)(2)(i)(ii).
>
> The trial record on being viewed in the light most favorable to the Commonwealth, certainly contains more than sufficient evidence to support the jury's rational inferences drawn from the circumstantial evidence, as well as the direct evidence, and common sense that when having repeated sexual liaisons with V.M., [Appellant] knew such was the result of V.M. being a victim of human trafficking. *See Commonwealth v. Crawford*, 24 A.3d 396, 401 (Pa. Super. 2011); *Commonwealth v. Wallace*, 817 A.2d 485, 490 (Pa. Super. 2002); and *Commonwealth v. Lewis*, 911 A.2d at 564, *quoting Commonwealth v. Alford*, 880 A.2d at 671 quoting *Commonwealth v. Gruff*, 822 A.2d at 776 ("'An intent is a subjective frame of mind, it is of necessity difficult of direct proof[.] We must look to all the evidence to establish intent, including, but not limited to, appellant's conduct as it appeared to

his eyes[.] Intent can be proven by direct or circumstantial evidence; it may be inferred from acts or conduct or from the attendant circumstances.'").

[Appellant] came into contact with V.M. through an advertisement posted on Backpage.com depicting the complainant clad scantily in lingerie, posed provocatively and which also provided, *inter alia*, as follows: "…I'm on spring break looking to go wild. I am looking for an [*sic*] generous man to make me got [*sic*] wild! Any men up for the challenge? I am doing In calls/out calls [*sic*]." *See* Commonwealth Exhibit C-1 – Backpage.com Advertisement for V.M. Responding to this ad's contact cellular telephone number (215-821-xxxx), [Appellant] arranged per Ray Justis to meet with V.M., and he during their "encounter" specifically inquired of her whether she was a "cop." N.T., 9/6/17, pp. 97, 100-01. N.T., 9/7/17, pp. 29, 31. For his four (4) "visits" with V.M., [Appellant] on each occasion paid Ray Justis five hundred ($500.00) dollars in exchange for which he on the later three (3) encounters had with the minor complainant sexual intercourse. N.T., 9/6/17, pp. 95-96, 99-103. When interviewed by Special Agent Goodhue, [Appellant] characterized Ray Justis as V.M.'s "pimp." N.T., 9/7/17, pp. 37, 40, 42. *See also* Commonwealth Exhibits C-8—Stipulation, C-10—Cricket Cell Phone Subscriber Information for Ray Justis (215-821-xxxx), C-11—Cricket Cell Phone Records for Ray Justis (215-821-xxxx), C-12—Special Agent Jennifer Batish Summary of Contacts between [Appellant] and Ray Justis, and C-13—FBI FD-302 Interview Form-[Appellant's] Interview on May 8, 2015.

[Appellant] was advised during his third encounter with V.M. of her constraining situation. Although he then voiced the desire to remove her from those circumstances, [Appellant] being aware that Ray Justis was then outside the hotel room took no such action. N.T., 9/6/17, pp. 99, 100, 102-03. It was only on his next and fourth liaison with V.M. and learning from her that Ray Justis was not then about the hotel area that [Appellant] ferreted [V.M.] from the hotel room and took her to his Aston residence. N.T., 9/6/17, pp. 103-05.

On consideration of the totality of the evidence presented at the trial, both direct and circumstantial, the same when viewed most favorably to the prosecution established that at those times [Appellant] had sexual intercourse with V.M., he knew that the

same was ". . . the result of [V.M.] being a victim of human trafficking." . . .

The jury as the "sole judge of the credibility and weight of all testimony" was "free to believe all, part of none of the evidence."

Trial Court Opinion, 12/26/18, at 34-37 (footnote and some legal and record citations omitted).

Upon review, the trial court's analysis is factually and legally seamless. As any further commentary by this Court would be redundant, we proceed to Appellant's second claim.

In his second issue, Appellant argues that the evidence did not support his conviction of concealing the whereabouts of a child. The statute reads:

**(a) Offense defined**.--A person who removes a child from the child's known place of residence with the intent to conceal the child's whereabouts from the child's parent or guardian, unless concealment is authorized by court order or is a reasonable response to domestic violence or child abuse, commits a felony of the third degree. For purposes of this subsection, the term "removes" includes personally removing the child from the child's known place of residence, causing the child to be removed from the child's known place of residence, preventing the child from returning or being returned to the child's known place of residence and, when the child's parent or guardian has a reasonable expectation that the person will return the child, failing to return the child to the child's known place of residence.

18 Pa.C.S.A. § 2909.

Appellant claims that he was wrongly convicted under this statute because he "did not remove [V.M.] from her known place of residence or

prevent her from returning there." Appellant's Brief at 10. Appellant continues:

> Appellant did not know her place of residence, her parents' home in Rhode Island, until they parted company. Complainant came and went as she pleased while living at Appellant's home in Delaware County, Appellant gave her a cell phone, and she was returned to her parents' home one week after receiving the phone, when she called her mother.

*Id.*

Although Appellant cites the relevant statute, 18 Pa.C.S.A. § 2909, he fails to cite any other pertinent authority to develop his argument, and does not offer a meaningful analysis as to why the evidence supporting conviction was insufficient.[3] Our rules require an appellant to provide in the argument section of his brief "such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). *See also Commonwealth v. B.D.G.*, 959 A.2d 362, 371-72 (Pa. Super. 2008) ("When an appellant fails to develop his issue in an argument and fails to cite any legal authority, the issue is waived."); *Commonwealth v. Beshore,* 916 A.2d 1128, 1140 (Pa. Super. 2007) (failure to develop an adequate argument in an appellate brief may result in waiver of the claim under Pa.R.A.P. 2119).

---

[3] At this writing, *Commonwealth v. Slocum*, 86 A.3d 272 (Pa. Super. 2014), is the only published opinion discussing sufficiency relative to 18 Pa.C.S.A. § 2909. However, Appellant, like the trial court, could have cited related case law; he did not.

Appellant's argument primarily assails the factual narrative set forth by the trial court in its opinion. Appellant further states:

> The story of this case tells of bad judgment by [Appellant] and ugly criminal conduct on the part of Mr. Justis, but the Commonwealth fails to establish the nexus required to convict and it seeks to convict by associating the two men. The record does not contain proof beyond a reasonable doubt that [Appellant] removed complainant from a known place of residence with the intent to conceal her whereabouts from her parent or guardian.

Appellant's Brief at 19-20. We disagree.

In the absence of waiver, Appellant's claim lacks merit. Again, the trial court has thoroughly and scrupulously explained why Appellant's argument lacks merit, stating:

> During their fourth paid for sexual liaison at the motel, V.M. informed [Appellant] of Ray Justis's then not being about the motel's immediate vicinity, which prompted [Appellant] to voice that the two (2) together flee the motel. N.T., 9/6/17, pp. 103-04. [Appellant] told her "... I can take you away from this. I have my own place. … Like I'm good. I'll take care of you. You don't have to worry about anything." N.T., 9/6/17, p. 104. V.M. in response directly acknowledged to [Appellant], "I'm a runaway. I'm 16 and I don't live anywhere near here. I'm not from here. I don't know where to go." N.T., 9/6/17, pp. 104, 142. Although knowing she was an underage runaway and prostituting for the pimp, Ray, [Appellant] then took V.M. from the New Jersey motel room to his Aston, Pennsylvania residence. N.T., 9/6/17, pp. 87-88, 89, 93-94, 95-96, 104-05.
>
> While at his home for approximately a month and a half, V.M.'s contact was restricted to just [Appellant] and his family, who were purposely misled at [Appellant's] urging to believe that [V.M.] was his online girlfriend from out-of-state. N.T., 9/6/17, pp. 105, 111, 115, 117, 145. V.M. when at [Appellant's] house was confined to eating her meals in the bedroom she shared with [Appellant], her actions routinely monitored by his family, and was also prohibited by him from going outside the residence. N.T., 9/6/17, pp. 110-12.

Over the course of a few weeks, V.M. "begged and pleaded" with [Appellant] to be given a cell phone and he eventually obliged. N.T., 9/6/17, p. 112. When asked why [Appellant] adamantly refused for a number of weeks to give her access to a cellular phone which she regularly implored him to provide, V.M. replied ". . . [H]e knew that I was going to reach out to somebody and that I was going to break free . . ." N.T., 9/6/17, p. 115.

Despite his full appreciation of her being an underage prostitute so working for the pimp, Ray, and status as a "runaway" from another state, [Appellant] neither undertook any efforts to return V.M. home nor even once made contact with law enforcement authorities. N.T., 9/6/17, pp. 104, 142. Rather, [Appellant] kept the minor complainant in the house and not only limited her contact to the outside, but "hid" V.M. at the residence under the false pretenses that she was his adult, online girlfriend visiting from out-of-town, while continuing with the child complainant his sexual relationship and demanding she greet him in the nude. N.T., 9/6/17, pp. 105, 111, 113-14, 117, 145.

Throughout her testimony, V.M. related she acceded to [Appellant's] constraining control "[b]ecause I was afraid of what would happen if I didn't. . . . That I'd be kicked out in the middle of somewhere where I don't know anything or, you know, I – you never know what someone else's intent is. I didn't know if he was, you know, going to be abusive or anything like that, you know. I was just scared." N.T., 9/6/17, p. 114.

On a review of the totality of the circumstances seen most favorable to the Commonwealth, the trial evidence as a matter of law established that [Appellant] intended to ". . . prevent the child from returning or being returned to the child's known place of residence . . ." 18 Pa.C.S.A. § 2909(a). . . .

Having enticed the minor prostitute to flee from her pimp with repeated promises that he would take care of her and she would have no further such worries, [Appellant] simply replaced Ray Justis's direct control of the underage runaway's life with that of his own, albeit limiting the child's sexual services just to him.

\*\*\*

It was the jury's task to consider the material testimony however they reasonably saw fit. The jury's conclusion that the trial evidence established [Appellant], a Pennsylvania resident, harbored V.M. in his home and did not return [her] to her mother

is on the instant record aptly supported. See 18 Pa.C.S.A. § 2909(a)(b) and ***Commonwealth v. Slocum***, 86 A.3d 272, 275-76 (Pa. Super. 2014).

Trial Court Opinion, 12/26/8, at 39-42, 45.

For the above reasons, and in agreement with the trial court, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/31/19