J-A16016-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHNATHAN SAVAGE | : | |
| | : | |
| Appellant | : | No. 1646 EDA 2020 |

Appeal from the Judgment of Sentence Entered December 13, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001056-2017

BEFORE:  McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McCAFFERY, J.:        **FILED SEPTEMBER 29, 2022**

Johnathan Savage (Appellant) appeals from the judgment of sentence[1] entered in the Philadelphia County Court of Common Pleas after his jury convictions for robbery, burglary, person prohibited from possession of firearms, carrying a firearm without a license, and conspiracy.[2]  Appellant

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Appellant's notice of appeal states that the appeal is from the order entered on "December 13, **2018**" and that his post-sentence motion was denied in April of **2020**.  Appellant's Notice of Appeal, 8/24/20 (emphasis added). However, a review of the record reveals the judgment of sentence was entered on December 13, **2019**.  Upon this Court's order to show cause why this appeal should not be quashed as untimely or improperly filed, Appellant explained that his notice of appeal contained a typographical error and he was appealing from the December 13, 2019, "sentencing order," made final after the denial of his post-sentence motions.  **See** Appellant's Response to Rule to Show Cause, 10/1/20, at 1.  The caption has been corrected accordingly.
[2] 18 Pa.C.S. §§ 3701(a)(1)(ii), 3502(a)(1), 6105(a)(1), 6106(a)(1), 903, respectively.

argues the trial court erred when it denied his motion *in limine* to admit expert witness testimony and allowed his co-conspirators to testify at trial. For the reasons below, we affirm.

Appellant's convictions stem from a December 11, 2016, burglary of the familial home of Ninja Barnes, Jamil Barnes, and their son I.B. Trial Ct. Op. 7/5/21, at 2. "[B]efore 9:30 p.m.[,]" two men, later identified as Justin Savage[3] and Marvel Grierson, knocked on the door of the Barnes's home on Devereaux Street in Philadelphia, Pennsylvania. *Id.* at 2-3. I.B. asked who was at the door and one of the men said, "G[4] or Johnathan." *Id.* at 2. I.B. opened the door and two masked gunmen came into the home. *Id.* During the incident, Grierson sustained a gunshot wound to his leg and both men fled the home "toward a waiting sedan . . . driven by a third male[.]" *Id.* at 4. After the crime, video surveillance footage from Hahnemann hospital showed an individual, later identified as Appellant, at the emergency room entrance, where Grierson was being treated after the home invasion. *See id.* at 5.

A few hours after the incident, the Barnes family viewed two videos, one from a neighbor's security camera showing the three perpetrators shortly before the incident and as they fled the scene, and the other from Hahnemann Hospital shortly after the burglary. N.T. Jury Trial, 10/9/19, at 12-13, 27.

_____

[3] Appellant and Justin Savage are "close relative[s.]" N.T. Jury Trial, 10/11/19, at 42.

[4] The Barnes family also knew Appellant by the nickname "G." Trial Ct. Op. at 2.

After viewing these videos, Mr. and Mrs. Barnes identified Appellant, a family friend for over two decades and employee of Mr. Barnes for three years, as the third perpetrator. Trial Ct. Op. at 5.

Appellant was arrested on December 16, 2016, and charged with, *inter alia*, robbery, burglary, person prohibited from possession of firearms, carrying a firearm without a license, conspiracy, aggravated assault, and unlawful restraint.[5] Prior to trial, Appellant filed a motion *in limine*, requesting to admit the testimony of Suzanne Mannes, PhD, a purported expert in the area of eyewitness testimony. Appellant's Motion *In Limine* to Admit Expert Testimony, 12/23/18, at 3-4 (unpaginated). After a February 1, 2019, evidentiary hearing, the trial court denied Appellant's motion. **See** Order, 2/1/19.

This case proceeded to a jury trial on October 8, 2019. The Commonwealth presented the testimony of, *inter alia*, Appellant's co-conspirators, Justin Savage and Grierson. Both men testified, by way of reading their guilty plea colloquies,[6] that they conspired with Appellant to commit the December 11, 2016, burglary and robbery of the Barnes family. N.T. Jury Trial, 10/10/19, at 144-49; N.T., 10/11/19, at 21-39.

---

[5] 18 Pa.C.S. §§ 2702(a), 2902(a)(1).

[6] Grierson pled guilty to robbery, burglary, and conspiracy. N.T., 10/10/19, at 138. Savage pled guilty to robbery, burglary, aggravated assault, and conspiracy. N.T., 10/11/19, at 16.

The jury found Appellant guilty of robbery, burglary, person prohibited from possession of firearms, carrying a firearm without a license, and conspiracy, and not guilty of aggravated assault and unlawful restraint. On December 13, 2019, the trial court sentenced Appellant to an aggregate term of 33 to 66 years' incarceration.

Appellant filed a post-sentence motion[7] challenging the weight of the evidence and the discretionary aspects of his sentence. Appellant's Post-Sentence Motion, 12/21/19, at 1, 6. The motion was denied by operation of law on April 19, 2020. *See* Docket Entry, 4/19/20. On August 24, 2020, Appellant filed a notice of appeal.

This Court subsequently issued a rule to show cause why Appellant's appeal, submitted more than 30 days after the trial court denied his post-sentence motion, should not be quashed as untimely. Appellant filed a response, asserting that the clerk of courts failed to enter an order denying his post-sentence motion by operation of law on the docket. Appellant's Response to Rule to Show Cause, 10/23/20, at 1-2. Our review of the record reveals that although an order denying Appellant's post-sentence motion by operation of law was entered on the docket, there is no indication that the

_____

[7] Appellant also filed a *pro se* "Motion for Post-Trial Relief" prior to sentencing on November 22, 2019, which the trial court did not consider. *See* ***Commonwealth v. Williams***, 241 A.3d 353, 354 n.1 (Pa. Super. 2020) (hybrid representation is not permitted in Pennsylvania and courts will not accept *pro se* motions when a defendant is represented by counsel) (citation omitted).

- 4 -

order was ever sent to Appellant as required by Pa.R.Crim.P. 720(B)(3)(c). *See id.* ("When a post-sentence motion is denied by operation of law, the clerk of courts shall [ ] enter an order on behalf of the court, and . . . shall serve a copy of the order on the" parties); *see also* Pa.R.Crim.P. 114(C)(2)(c) (mandating that docket entries of orders entered by the trial court contain, *inter alia*, "the date of service of the order or court notice"). Because this constitutes a breakdown in the operation of the courts, we decline to quash Appellant's appeal as untimely. *See Commonwealth v. Perry*, 820 A.2d 734, 735 (Pa. Super. 2003) ("where the clerk of courts does not enter an order indicating that the post-sentence motion is denied by operation of law and notify the defendant of same, a breakdown in the court system has occurred and we will not find an appeal untimely under these circumstances"); *Commonwealth v. Braykovich*, 664 A.2d 133, 138 (Pa. Super. 1995) (excusing facially untimely notice of appeal where clerk of courts failed to notify defendant that post-sentence motions were by operation of law, under predecessor to Pa.R.Crim.P. 720(B)(3)(c)).

Appellant subsequently complied with the trial court's order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), wherein he challenged: (1) the trial court's exclusion of expert witness testimony; (2) the sufficiency of the evidence; (3) the admission of co-conspirator testimony; (4) the admission of testimony from the prosecutor who handled co-conspirator's guilty pleas; (5) the weight of the evidence; and

(6) the discretionary aspects of the imposed sentence. Appellant's Statement of Errors Complained of On Appeal, 3/22/21, at 1-6.

Appellant raises the following claims on appeal:

1. Did the trial court abuse its discretion by excluding Appellant's proposed expert on eyewitness misidentification?

2. Did the trial court violate Appellant's due process right to present a complete defense by excluding Appellant's proposed expert witness on eyewitness misidentification?

3. Did the trial court abuse its discretion by allowing the government to call all of Appellant's co[-]defendants and having the trial prosecutor cross examine them to testify that they had pleaded guilty including that they conspired with Appellant?

Appellant's Brief at 4.[8]

As all of Appellant's claims challenge the admission of evidence,

[appellate courts] apply an evidentiary abuse of discretion standard of review. The admission of evidence is committed to the sound discretion of the trial court, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous.

*Commonwealth v. Moser*, 999 A.2d 602, 605 (Pa. Super. 2010) (citation omitted). We review a challenge to a trial court's ruling on a *motion in limine* by the same standard as the admission of evidence at trial. *Id.*

---

[8] Appellant has, therefore, waived the other claims raised in his 1925(b) statement. *See* Pa.R.A.P. 2119(a), (c) (argument must have discussion of pertinent authority and appropriate citation to the record); *Commonwealth v. Sipps*, 225 A.3d 1110, 1116 (Pa. Super. 2019) (failure to adequately develop argument results in waiver of claims) (citations omitted).

In his first claim, Appellant argues that the trial court abused its discretion when it denied his motion *in limine* to admit purported expert witness testimony regarding eyewitness misidentification. Appellant's Brief at 40. Appellant maintains that the trial court erred when it concluded that "none of the factors" relevant to a potential misidentification were present here. Appellant's Brief at 46-47. Appellant contends that the Commonwealth "depended solely or primarily" on eyewitness identification and this evidence was "critical" to its case. *Id.* at 49 (internal quotation marks omitted). He further argues that there is not an "abundance of circumstantial evidence[,]" non-identification evidence, or substantial corroborating evidence that could connect Appellant to the neighbor's security footage. *Id.* at 48, 50, 52-53. Appellant then avers that the trial court "did not cautiously cross-examine Dr. Mannes in a brief, unbiased manner" as it should have. *Id.* at 41. Instead, he insists the trial court examined Dr. Mannes "for approximately four times as long as" the Commonwealth and "asked questions and made statements that only helped" the Commonwealth. *Id.* at 42.

To determine if evidence is admissible, the trial court must first determine if it is relevant. Pa.R.E. 402; ***Commonwealth v. Bergen***, 142 A.3d 847, 850 (Pa. Super. 2016). Evidence is relevant when it has

> any tendency to make a fact more or less probable than it would be without the evidence[,] and the fact is of consequence in determining the action. Pa.R.E. 401(a), (b). However, pursuant to Rule 403, "[t]he court may exclude relevant evidence if its probative value is outweighed by a danger of . . . confusing the issues [or] misleading the jury[.]" Pa.R.E. 403.

*Bergen*, 142 A.3d at 850 (some internal quotation marks omitted).

When expert testimony is at issue, we are guided by Pennsylvania Rule of Evidence 702, which states a witness qualified as an expert "may testify in the form of an opinion or otherwise if . . . the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson[,] will help the trier of fact to understand the evidence or to determine a fact in issue[, and their] methodology is generally accepted in the relevant field." Pa.R.E. 702(a)-(c).

In support of his argument, Appellant compares the current matter to the following cases: *Commonwealth v. Thomas*, 215 A.3d 36 (Pa. 2019);[9] *Commonwealth v. Walker*, 92 A.3d 766 (Pa. 2017); *Commonwealth v. Brown*, 200 A.3d 986 (Pa. Super. 2018); and *Commonwealth v Selenski*, 158 A.3d 102 (Pa. Super. 2017). Appellant's Brief at 41-53. However, it is clear the controlling case concerning the admission of expert testimony on eyewitness misidentification is *Walker*. We conclude *Walker* is distinguishable on the facts.

In *Walker*, the appellant was accused of committing two gunpoint robberies. *Walker*, 92 A.3d at 769. In the first robbery, he held three victims at gunpoint. *Id.* 769-70. Two of the victims identified the appellant from photo arrays and one of those same victims identified the appellant at a later

_____

[9] The defendant in *Thomas* offered the same expert witness, Dr. Mannes, on a similar basis as Appellant. *See Thomas*, 215 A.3d at 48.

in-person line-up. *Id.* at 770. During the second robbery, two victims were held at gunpoint, and both later identified the appellant as the perpetrator after viewing photo arrays. *Id.* "The sole evidence connecting [the a]ppellant to the robberies was eyewitness identification by the victims." *Id.*

Walker filed a motion *in limine* to admit expert testimony regarding the fallibility of eyewitness identification. *Walker*, 92 A.3d at 770-71. The trial court denied the motion, stating Pennsylvania case law held that expert testimony concerning eyewitness identification was inadmissible because it would have an "unwarranted appearance of authority on the eyewitness's credibility[.]" *Id.* at 771. The appellant was subsequently convicted of the second robbery, but acquitted of the first. *Id.* A panel of this Court affirmed the appellant's judgment of sentence on direct appeal. *Id.* at 772.

The Pennsylvania Supreme Court granted allocatur review "to consider whether a trial court may permit, in its discretion, the testimony of an expert in the field of eyewitness identification." *Walker*, 92 A.3d at 772. Walker argued that certain factors were relevant to make jurors "aware of the variables that impact eyewitness accuracy" and they were "critical to 'a fair adjudication of the truth.'" *Id.* at 774. The factors include:

> (1) the phenomenon of 'weapons focus'; (2) the reduced reliability of identification in cross-racial identification cases; (3) the significantly decreased accuracy in eyewitness identifications in high-stress/traumatic criminal events; (4) increased risk of mistaken identification when police investigators do not warn a witness, prior to viewing a photo array or line up, that the perpetrator may or may not be in the display; and (5) the lack of

a strong correlation between witness statements of confidence and witness accuracy.

*Id.* at 773. Our Supreme Court agreed and concluded

such expert testimony on the limited issue of eyewitness identification as raised in this appeal may be admissible, at the discretion of the trial court, and assuming the expert is qualified, the proffered testimony relevant, and will assist the trier of fact. . . . The admission must be properly tailored to whether the testimony will focus on particular characteristics of the identification at issue and explain how those characteristics call into question the reliability of the identification. . . .

*Id.* at 792.

Further, the Court opined that to have the evidence admitted,

the defendant must make an on-the-record detailed proffer to the court, including an explanation of precisely how the expert's testimony is relevant to the eyewitness identifications under consideration and how it will assist the jury in its evaluation. The proof should establish the presence of [the above] factors . . . which may be shown to impair the accuracy of eyewitness identification in aspects which are (or to a degree which is) beyond the common understanding of laypersons.

*Id.*

We agree with the trial court's conclusion that none of the ***Walker*** factors were present in the case before us. Trial Ct. Op. at 20, 22. First, we note that although Appellant offered Dr. Mannes' testimony to show that the eyewitness identification was unreliable based on ***Walker***, her testimony amounted to observations that the length of the videos were short, and the videos' quality did not show full and unobstructed views of Appellant's face. N.T., 2/1/19, at 75, 77. Dr. Mannes opined that she was "not sure" that the videos had enough information for a person to have a "detailed impression"

of the individuals in the videos, but admitted this is something the jurors could "[p]ossibly" assess from viewing the videos themselves. *Id.* at 93.

Regarding the *Walker* factors, since Appellant never entered the home, the victims would not have been distracted by the presence of a weapon, nor would they have misidentified him based on his presence during a traumatic event. *See Walker*, 92 A.3d at 773. Moreover, there was no cross-racial identification issue, the police did not present a photo array or line up, and the trial court did not believe the confidence in the victims' identifications impacted their accuracy since the victims knew Appellant for nearly three decades prior to the incident. *See id.*; Trial Ct. Op. at 22-23.

The remaining cases Appellant cites are also distinguishable for similar reasons. *See Thomas*, 215 A.3d at 50 (trial court did not err in excluding expert testimony on eyewitness identification because eyewitness testimony was not the primary evidence of defendant's guilt); *Brown*, 200 A.3d at 991 (trial court did not abuse its discretion when it excluded expert witness testimony on eyewitness identification because the Commonwealth offered independent corroborating evidence); *Selenski*, 158 A.3d at 116 (trial court did not abuse its discretion when it excluded expert testimony regarding eyewitness identification because the Commonwealth presented circumstantial evidence and "was not solely or primarily dependent" on eyewitness identification).

Further, the Commonwealth offered other physical corroborating evidence:

Appellant's clothing that he had worn in the hospital emergency room[,] particularly his vibrant blue shoes[,] had been confiscated by law enforcement and displayed to the jury for comparison. The sedan owned by Appellant's brother and admitted conspirator Justin Savage was recovered. The blood recovered within the sedan's back seat area was matched by DNA analysis to admitted conspirator . . . Grierson.

Trial Ct. Op. at 23. Appellant failed to demonstrate an abuse of discretion since the evidence supported the trial court's determination that Dr. Mannes' testimony was not relevant, would not aid the jury, and where the Commonwealth was not relying "solely or primarily" on eyewitness identification. *See Walker*, 92 A.3d at 787.

Appellant also argues the trial court "did not cautiously cross-examine Dr. Mannes in a brief, unbiased manner" as it should have. Appellant's Brief at 41. In support of this argument, Appellant cites *Commonwealth v. Seabrook*, 379 A.2d 564, 568 (Pa. 1977). In *Seabrook*, the appellant argued the trial court abused its discretion when it showed "pro-prosecution bias" while it questioned a witness during a suppression hearing. *Id.* at 566. Ultimately the Pennsylvania Supreme Court concluded the trial court did not abuse its discretion because the questioning (1) occupied "three and one-half pages in a 107 page record[;]" (2) drew rational inferences from the evidence; and (3) asked questions which "did the Commonwealth's case no good." *Id.* at 568 (footnote omitted).

Upon review of the record, we conclude the trial court did not abuse its discretion when it examined Dr. Mannes. While the trial court engaged in a lengthy examination of the witness, a review of the transcript demonstrates it

did so to seek an explanation of how her expertise was relevant to the salient facts, and to clarify her research methods and sources, a topic which neither party adequately questioned her. N.T., 2/1/19, at 85-99. The length of the trial court's questioning does not, alone, reflect an abuse of discretion. **See Seabrook**, 379 A.2d at 567-68 (It is proper for a trial court to question a witness regarding facts "which did not appear from either counsel's examination[.]" A trial court has a duty to "ascertain the truth" in criminal proceedings, which may "necessitate[ ] interrogation of witnesses to clear up some doubtful fact") (citations and internal quotation marks omitted). Like **Seabrook**, the nature of the trial court's questions also no not reflect a bias towards any one party. Instead, the examination illustrated a thorough inquiry into the usefulness of Dr. Mannes' specific claimed expertise. Thus, no relief is due on Appellant's first issue.

In his second claim, Appellant argues that the trial court deprived him of his right to due process by not allowing him to present a "complete defense" when it excluded expert witness testimony. Appellant's Brief at 54. Appellant avers that Dr. Mannes' testimony "could have given [the] jury a scientific, professional perspective . . . about why" the eyewitness testimony was "inherently unreliable." **Id.** at 57. Appellant insists that absent this testimony, the jury had no basis "beyond the word of [his] counsel" that the identification testimony may have been unreliable. **Id.** at 58.

We agree with the trial court's determination that the Pennsylvania Supreme Court's **Walker** decision does not "grant carte blanch to admission

of expert testimony." Trial Ct. Op. at 16. To the contrary, the **Walker** decision limits the admission of such testimony and leaves the decision of admissibility to the trial court's discretion. **See Walker**, 92 A.3d at 792. For the reasons stated above, we conclude the trial court did not abuse its discretion when it excluded irrelevant evidence that would not aid the jury in its fact-finding duties. No relief is due.[10]

In his final argument, Appellant avers the trial court abused its discretion when it allowed his co-defendants to testify that they pled guilty and conspired with Appellant to commit the offenses charged. Appellant's Brief at 58. Appellant maintains this evidence was inadmissible as unfairly

_____

[10] We note this Court's recent decision, **Commonwealth v. Robinson**, __ A.3d __, 1127 EDA 2021 (Pa. Super. June 27, 2022), addresses expert testimony concerning eyewitness identification. In **Robinson**, another panel of this Court granted the defendant a new trial on post-conviction review after it concluded counsel was ineffective for not offering eyewitness identification expert testimony based on the following: (1) the Commonwealth's case was based "solely or primarily" on eyewitness identification; (2) the **Walker** factors were present; (3) counsel for the defendant raised a misidentification defense; and (4) as a result, the defendant was prejudiced by counsel's actions. **Robinson**, __ A. 3d__, __, 1127 EDA 2021, at 11, 12-13 n.4, 16. The panel emphasized the "limited nature" of the decision, stating that while expert testimony on eyewitness identification is permitted, it is not required. **Id.** at 24.

**Robinson** is distinguishable both procedurally and factually from the present matter. Here, Appellant has raised a challenge to the trial court's discretion when it did not admit Dr. Mannes' testimony, whereas the defendant in **Robinson** challenged counsel's ineffectiveness for failing to call an expert witness. Further, as discussed **supra**, the Commonwealth presented additional evidence of Appellant's guilt and the factors outlined in **Walker** are not present.

prejudicial by demonstrating to the jury "the case against [him] had already twice been proven beyond a reasonable doubt." *Id.* at 59. Appellant also insists the trial court's warning to both co-defendants pertaining to perjury "unduly influenced them" to change their testimony. *Id.* at 60-61.

Preliminarily, the Commonwealth contends Appellant's challenges to the admission of his co-defendants' testimony are waived. *See* Commonwealth's Brief at 51-53. First, it insists that Appellant did not raise specific objections at trial on the basis that the testimony was unfairly prejudicial or that the court's perjury warnings were inappropriate. Commonwealth's Brief at 50-51. Moreover, it asserts Appellant's claim that the trial court abused its discretion when it warned his co-defendants of the potential consequences of perjury is also waived because Appellant failed to include this claim in his Pa.R.A.P. 1925(b) statement. Commonwealth's Brief at 53. Upon our own review, we agree with the Commonwealth that Appellant failed to preserve, in the trial court, either of these issues he now raises on appeal. *See* N.T., 10/10/19, at 142 (counsel objects to reading of Grierson's plea colloquy based on hearsay grounds); N.T., 10/11/19, at 20 (counsel objects to reading of Justin Savage's plea colloquy based on hearsay and confrontation clause grounds); *see also* Appellant's Statement of Errors Complained of On Appeal at 1-6. Thus, Appellant's arguments here are waived for our review. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."); Pa.R.A.P. 1925(b)(4)(vii) (issues not included in a 1925(b) statement are waived); *Commonwealth v. McGriff*, 160 A.3d 863,

873 (Pa. Super. 2017) (concluding challenges to the admissibility of evidence were waived when the appellant did not make timely and specific objections in the trial court).

In any event, had Appellant preserved his objection that the admission of his co-defendants' testimony was unfairly prejudicial, we would rest on the trial court's opinion:[11]

> By its very nature, the testimony of both co-defendants was relevant to prove Appellant's secret participation in the conspiracy to rob and assault the Barnes' family members in their home. Each defendant was subjected to examination before the jury by all parties through their counsel. Thus, this admissible evidence far outweighed any prejudicial impact because it supported identification of Appellant as a perpetrator. As such, Appellant was not unduly prejudiced.

Trial Ct. Op. at 26.

Judgment of sentence affirmed.


*Judgment Entered.*

Joseph D. Seletyn, Esq.
*Prothonotary*


*Date: 9/29/2022*

---

[11] The trial court did not address Appellant's assertion that it improperly influenced the testimony of his co-defendants. We pass no judgment on this waived claim.