J-A05010-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NASIR WATSON | : | |
| | : | |
| Appellant | : | No. 139 EDA 2023 |

Appeal from the Judgment of Sentence Entered December 1, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0007005-2021

BEFORE:  DUBOW, J., KING, J., and LANE, J.

MEMORANDUM BY DUBOW, J.:                    **FILED MAY 15, 2024**

Appellant, Nasir Watson, appeals from the December 1, 2022 Judgment of Sentence entered in the Philadelphia County Court of Common Pleas following his conviction of First-Degree Murder, Firearms Not to Be Carried Without a License, Possession of an Instrument of Crime, and Recklessly Endangering Another Person.[1]  Appellant challenges the sufficiency and weight of the evidence identifying him as the perpetrator.  After careful review, we affirm.

**A.**

The factual and procedural history is as follows.  On the afternoon of May 4, 2021, at 2:50 PM, a shooter fired nineteen shots into a victim near the intersection of 23rd St. and Lehigh Avenue.  Video recorded by area pole

---

[1] 18 Pa.C.S. § 2502(a), 6106(a)(1), 907(a), and 2705, respectively.

cameras showed a young male with brown skin and thick, dark sideburns, wearing a black hat, black face mask, black hooded jacket, black pants with a white logo, white socks, and black sneakers with a white New Balance logo, exiting a parked black Chevrolet Malibu from the passenger side and following the victim who was carrying a baby. A short while later, a different pole camera captured the same man dressed in black standing over the victim, who now lay on the ground, firing a gun at the victim as the baby lay nearby. The perpetrator then ran back towards the Malibu. The video recorded by the pole cameras captured a clear view of the Malibu's license plate. Investigators subsequently located the vehicle at the home of Appellant's father, where Appellant lived. The police also recovered a black hooded sweatshirt and a black jacket from the trunk of the Malibu.

On May 11, 2021, following further investigation, the Commonwealth arrested Appellant and charged him with the above offenses, Aggravated Assault with respect to the baby, and firearms offenses, including Person Not to Possess.

On November 28, 2022, Appellant proceeded to a jury trial where the Commonwealth presented video recordings from the day of and the day after the shooting, along with testimony from several investigating police officers.

Officer Christian Albu testified, *inter alia*, that he responded to the area after receiving reports of a shooting, where a woman approached him and stated that the shooter was a Black male with black hair who was wearing all black, including a black hat.

- 2 -

Detective Thorsten Lucke, an expert in surveillance video recovery, cell site analysis, and cell phone data extraction, testified as the Commonwealth played video recordings captured on the day of the shooting by nearby pole cameras and the next day by a surveillance camera in the parking lot of Cousins Supermarket near Appellant's home. The video from Cousins Supermarket recorded a man exiting the driver's seat of the same Malibu, later identified as Appellant, and helping two woman load groceries into the Malibu.

In addition, Detective Lucke showed the jury two images of the shooter for comparison to the man in the supermarket parking lot, calling attention to the similarities in the thick black sideburns, hats, and sneakers. He also showed photos captured from Appellant's cell phone from a couple of weeks prior to the shooting where he was wearing the same black pants and sneakers as those seen in the video recording on the day of the shooting.

Regarding the geolocation data obtained from Appellant's cell phone, Detective Lucke testified that on the day of the shooting, Appellant's cell phone travelled from his home towards the area of the shooting between 1:20 PM and 1:55 PM, but then left the area at 2:10 PM, prior to the shooting. He observed that the cell phone then remained inactive until 3:39 PM, when it began receiving calls and text messages again. He speculated that Appellant's phone may have been turned off or in airplane mode during the period of inactivity on the day of the shooting. He also testified that Appellant's cell phone data indicated that the phone was in the parking lot of Cousins

Supermarket the day after the shooting at the same time shown on the parking lot surveillance video recording of the man loading groceries into the Malibu.

Calvin Monroe, Appellant's parole officer, testified that he had met with Appellant several times, including on May 11, 2021. He further testified that on May 11th, detectives showed him video footage from both the shooting and Cousins Supermarket and that he was able to identify Appellant in the supermarket video but not in the pole camera recording.

Detective John Maha testified that the Malibu's license tag was registered to Daniel Watson, Appellant's father, and there was no indication that it had been stolen. He further testified that Appellant lived with his father and several female relatives, and that Appellant's father had a long grey or white beard. He explained that police officers did not recover a firearm, ammunition, or clothing worn by the perpetrator when searching Appellant's home. He also stated that police officers obtained a sample of Appellant's DNA following his arrest.

Officer Dennis Moore of the Crime Scene Unit testified that he took several fingerprints and DNA swabs from the Malibu and its contents. Craig Judd, a forensic scientist, then testified that the swabs from the driver's side door and a phone case found in the center console were consistent with Appellant's DNA. He further testified that the swab from the steering wheel had a mixture of DNA profiles that likely included Appellant, and the remaining swabs were either inconclusive or excluded Appellant.

- 4 -

Additionally, Gamal Emira, a forensic scientist, testified that he found gunshot residue ("GSR") on the left sleeve and cuff of the black jacket found in the trunk of the Malibu. Finally, the parties stipulated that Appellant's fingerprints were present on the phone case.

Following the Commonwealth's evidence, Appellant moved for a judgment of acquittal on the Aggravated Assault charge, which the court denied.

On December 1, 2022, the jury convicted Appellant of the above crimes.[2] The same day, the court sentenced Appellant to an aggregate sentence of life imprisonment without the possibility of parole.

On December 6, 2022, Appellant filed a post-sentence motion challenging the weight of the evidence, which the court denied on December 9, 2022.

Appellant filed a timely Notice of Appeal. Both he and the trial court complied with Pa.R.A.P. 1925.

**B.**

Appellant raises two issues for our review:

1. Did the trial court commit error when it denied Appellant's post-trial motion for judgment of acquittal, finding the evidence presented at trial was legally sufficient to sustain a verdict of guilty on all charges against [] Appellant?

---

[2] The jury acquitted Appellant of the Aggravated Assault charge. The Commonwealth *nolle prossed* the firearms charges.

2. Did the trial court abuse its discretion when it denied [] Appellant's motion for a new trial based upon the weight of the evidence?

Appellant's Br. at 6 (some capitalization omitted).

**C.**

Appellant first challenges the sufficiency of the evidence supporting his convictions. Appellant's Br. at 21-28. Specifically, he asserts the evidence was insufficient to establish his identity as the perpetrator of the crimes. *Id*.

"A claim challenging the sufficiency of the evidence is a question of law." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). We review a sufficiency challenge *de novo*, and our scope of review is limited to the evidence of record and all reasonable inferences arising therefrom viewed in the light most favorable to the Commonwealth as verdict winner. *Commonwealth v. Rushing*, 99 A.3d 416, 420-21 (Pa. 2014). An appellate court may not substitute our judgment for that of the factfinder. *Commonwealth v. Sebolka*, 205 A.3d 329, 337 (Pa. Super. 2019). The evidence is sufficient to support the verdict "when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." *Widmer*, 744 A.2d at 751.

While a finding of guilt cannot be based only upon "suspicion or surmise[,]" a conviction based solely on "circumstantial evidence is sufficient so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." *Commonwealth v. Cline*, 177 A.3d 922, 925 (Pa. Super. 2017) (citation omitted). The factfinder is "entitled to draw

reasonable inferences from the facts presented, resolve any issues of credibility and believe all, part or none of the evidence." ***Commonwealth v. Hankerson***, 444 A.2d 727, 728 (Pa. Super. 1982). The facts established by the Commonwealth "need not preclude every possibility of innocence." ***Commonwealth v. Sipps***, 225 A.3d 1110, 1113 (Pa Super. 2019) (citation omitted). Rather, the factfinder may resolve any doubts regarding a defendant's guilt unless the evidence is so inconclusive that, as a matter of law, there is no probability of guilt. ***Id.***

Finally, "evidence of identification need not be positive and certain to sustain a conviction." ***Commonwealth v. Jones***, 954 A.2d 1194, 1197 (Pa. Super. 2008). "Although common items of clothing and general physical characteristics are usually insufficient to support a conviction, such evidence can be used as other circumstances to establish the identity of a perpetrator." ***Commonwealth v. Orr***, 38 A.3d 868, 874 (Pa. Super. 2011).

\*

Appellant maintains that "the Commonwealth failed to provide evidence [] that was sufficient to enable the jury to identify [] Appellant as the shooter beyond a reasonable doubt." Appellant's Br. at 24. In support, he argues that specific pieces of evidence, including the fingerprints and DNA on the phone case, the GSR on the jacket, and the cell phone geolocation data, were

insufficient to identify him as the perpetrator.[3]  *Id.* at 24-27.  He also notes that "the police never recovered a firearm, ammunition, or shoes that the [perpetrator] wore during any of the execution[s] of the numerous search warrants."  *Id.* at 27.

After our review of the totality of the evidence in the light most favorable to the Commonwealth, we conclude that the evidence presented to the jury and all reasonable inferences drawn therefrom supported its conclusion that it was Appellant who shot and killed the victim.  First, several pieces of evidence demonstrated that Appellant had access to the Malibu: (1) the presence of his DNA and fingerprints; (2) testimony that the Malibu belonged to Appellant's father and was not reported stolen; (3) surveillance footage of Appellant, identified by Mr. Monroe and corroborated by geolocation data, driving the Malibu the next day; and (4) the recovery of the Malibu from

_____

[3] Appellant maintains that his fingerprints and DNA on the cell phone case are insufficient to prove that he was the passenger, and therefore the shooter, because his DNA placed him in the driver's seat, no one observed him in the passenger seat, and there was DNA evidence recovered from the passenger seat area that was not his.  Appellant's Br. at 24-25.  He also argues that the GSR on the jacket was insufficient to establish that he was the shooter because it was on the jacket's left cuff only, but the video shows the shooter using his right hand.  *Id.* at 25.  Finally, he argues that the geolocation data fails to show his location at the time of the shooting, and Detective Lucke could not specify whether his cell phone was turned off or simply not receiving calls.  *Id.* at 26.  This argument ignores the fact that the Commonwealth presented the evidence listed above that demonstrated that Appellant was the shooter, and our standard of review requires us, when considering the sufficiency of the evidence, to review the evidence in the light most favorable to the Commonwealth.

Appellant's house.  N.T. Trial, 11/29/22, at 116, 119, 127, 225; N.T Trial, 11/30/22, at 45, 54-56, 97-98.  Additionally, surveillance footage from the supermarket parking lot and photos from Appellant's cell phone indicated that he owned similar clothing as the perpetrator and had similar sideburns.  N.T. Trial, 11/29/22, at 171, 187.  On the other hand, testimony established that Appellant's father, who owned the Malibu, had a distinctive long beard, which the perpetrator did not have.  N.T Trial, 11/30/22, at 59.  Furthermore, cellular data showed that Appellant traveled to the area of the shooting an hour before the shooting, but then left.  N.T. Trial, 11/29/22, at 212-13.  Finally, although cellular data did not place Appellant at the scene during the shooting, Detective Lucke's testimony that Appellant may have turned his cell phone off during that time, when combined with the other evidence, supports a reasonable inference that Appellant was involved in the shooting.  N.T. Trial, 11/29/22, at 217.

Accordingly, because the evidence was not "so inconclusive that, as a matter of law, there is no probability of guilt," **Sipps**, 225 A.3d 1113, we conclude Appellant's first claim warrants no relief.

**D.**

Appellant next claims that the trial court erred in denying his post-sentence motion challenging the weight of the evidence.  Appellant's Br. at 28-30.  In reviewing a weight of the evidence claim, an appellate court does not directly assess the "underlying question of whether the verdict is against the weight of the evidence," but instead addresses whether the trial court

abused its discretion in deciding the issue raised in the post-sentence motion. ***Commonwealth Lake***, 281 A.3d 341, 347 (Pa. Super. 2022).

"The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses." ***Commonwealth v. Talbert***, 129 A.3d 536, 545 (Pa. Super. 2015) (citation omitted). "Resolving contradictory testimony and questions of credibility are matters for the fact-finder." ***Commonwealth v. Hopkins***, 747 A.2d 910, 917 (Pa. Super. 2000). Furthermore, for a defendant to prevail on a weight of the evidence challenge, "the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." ***Talbert***, 129 A.3d at 546 (citation omitted). We cannot substitute our judgment for that of the fact-finder. ***Id***.

*

Appellant maintains that there was a "lack of any direct evidence and [] contrary circumstantial evidence," and "[a]lmost every piece of Commonwealth evidence could be weighed in favor [of] Appellant." Appellant's Br. at 30. He cites the same alleged deficiencies in the evidence that he discussed in his sufficiency argument. ***Id.*** at 29. He also argues that the Commonwealth's failure to present a motive weighs in his favor when combined with the lack of direct evidence. ***Id.*** at 30.

The trial court stated that, when addressing a weight of the evidence claim, its "duty is not to assess what is missing, but instead, to determine whether the totality of the evidence, accepted by the jury, is so tenuous,

- 10 -

vague, and uncertain that it shocks one's sense of justice[.] Such is not the case here." Trial Ct. Op. at 15. It found that there was "uncontradicted, overwhelming circumstantial evidence" establishing that Appellant was the shooter. *Id.* at 16.

Appellant's argument does not convince us that the trial court abused its discretion in concluding that the weight of the evidence supported the verdict. Here, the jury as factfinder weighed the evidence presented at trial, to reach its conclusion beyond a reasonable doubt that Appellant committed the murder. Appellant asks us to reweigh the circumstantial evidence to reach the opposite conclusion. It is well settled, however, that this Court cannot and will not reweigh the evidence. Further, the evidence was not so tenuous, vague, and uncertain that the verdict shocks our conscience.

We, therefore, conclude that the trial court did not abuse its discretion in determining that the weight of the evidence supported the verdict. This claim, thus, merits no relief.

**E.**

We conclude that both of Appellant's claims warrant no relief. Accordingly, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary

Date:  5/15/2024