J-S09006-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                                :              PENNSYLVANIA
                                :
              v.                :
                                :
                                :
                                :
MICHAEL ADAMS                   :
                                :
              Appellant         :    No. 927 EDA 2024

Appeal from the Judgment of Sentence Entered October 18, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000883-2022

BEFORE:   LAZARUS, P.J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, P.J.:                    **FILED JULY 7, 2025**

Michael Adams appeals from the judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, following his conviction of one count each of prohibited possession of firearm,[1] possession of instrument of crime (PIC),[2] terroristic threats with intent to terrorize another,[3] simple assault,[4] and recklessly endangering another person (REAP).[5] After careful review, we affirm.

_____

[*]Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 6105(a)(1).

[2] *Id.* § 907(a).

[3] *Id.* § 2706(a)(1).

[4] *Id.* § 2701(a).

[5] *Id.* § 2705.

On or around May 30, 2021, Adams and his family and Telanah Oliver and her family were involved in a physical altercation arising from a disagreement over moving Oliver's vehicle. *See* N.T. Nonjury Trial, 7/12/22, at 8-9, 20-24. At some point during the altercation, Adams lost his phone. *Id.* at 67-71. This case arises from a subsequent altercation that occurred on June 1, 2021, when Adams attempted to retrieve his cell phone from Oliver's home. On July 12, 2022, the court held a bench trial on the above charges.

The trial court summarized the following facts from trial as follows:

[O]n June 1, 2021, at approximately 3:00 p.m., [Adams] knocked on [Oliver's] front door at 17[13] South 30th Street in Philadelphia[, asking if she had his cellphone]. (N.T. [Nonjury Trial, 7/12/22,] at 7-10, 27). [] Oliver testified that. . . she and her sister, Malika, were just about to leave in her car [and] to avoid an altercation, they decided to wait a minute before leaving the home. [*Id.* at 27.] When they eventually went outside, [Adams] immediately followed them to [] Oliver's car, stating, "Give me back my phone." [] Oliver responded, "Nobody has your phone." [Adams] replied, "Bitch, you don't have your entourage now. Fight my wife." Malika told [] Oliver, "No[,]" and shepherded her toward the car. [Adams] then called out to his wife and stepdaughter, "Aisha, Aniyah, come on. She out here now." ([*Id.*] at 25-2[9], 40).

[] Oliver testified that Aisha and Aniyah quickly approached and stood on either side of [Adams], pinning [] Oliver and Malika by the car. [*Id.* at 12-13.] Oliver observed Aisha holding a handgun and Aniyah holding a water bottle filled with bleach. [*Id.* at 11, 39-41.] When Aniyah started to unscrew the bottle cap, [] Oliver stated, "You throw that bleach on me, [and] the same thing that happened the day before is going to happen again." [*Id.* at 41.]

At that point, [Adams]—who was wearing an Islamic thobe that extended down to his ankles—retrieved an assault rifle from behind his back and pointed it at [] Oliver. [*Id.*] at 11-18, 31, 40-41, 43-44. [] Oliver testified that, while pointing the assault rifle at her face, [Adams] threatened her as follows:

A. [] It was a big gun. He pulled it from behind him. And he was like, ["]Bitch, do something now.["] Like directly pointed at me.

Q. So when you say "AK-47," you're talking about an assault rifle?

A. A long gun. It had a clip in the back of it. Like, a handle in the back, a handle in the front.

* * *

[And then] he made a statement like, ["]I got bail money. I got lawyer money. I got Janazah [funeral] money. Whichever way you want to do [it], that's how we're gonna do it.["]

([*Id.*] at 13-16).

Believing that [Adams] was about to shoot her, [] Oliver sprayed him with mace in a desperate attempt to flee:

[Oliver]: The daughter has bleach in her hand, taking the top off. The wife has a little gun in her hand, and [Adams] has an AK[-]47. So[,] for me to get into my car, I sprayed the mace and backed up.

* * *

I could remember that vividly . . . he, like, pointed [it] directly [at] my face. So it was, like, I'm staring at the gun, and I was thinking[,] if I spray the mace, he's going to shoot me anyway, but I'll just take the chance.

([*Id.*] at 31, 44-45).

[] Oliver testified that, after using the mace, she was able to get into her car[,] but believed that [Adams] was still going to shoot her. [*Id.* at 18.]. . . Oliver was so overwhelmed by having an assault rifle pointed at her that she left Malika behind in the melee. [*Id.* at 41-42.]. . . Oliver testified that, as she drove away, she immediately called 9-1-1 to report that [Adams] had just threatened her with a gun[.]

Trial Court Opinion, 6/4/24, at 2-4.

Additionally, Philadelphia Police Detective Andrew Gallagher testified that, on June 1, 2021, he executed a search warrant for 1715 South 30th Street in response to the above incident. Detective Gallagher recovered a total of four firearms—two rifles and two semiautomatic handguns[6]—in addition to "a lot of ammunition and a ballistic vest." N.T. Nonjury Trial, 7/12/22, at 48. One of the rifles was an AR-15 assault rifle, which Detective Gallagher recovered from the kitchen area of the home. *See* Trial Court Opinion, 6/4/24, 5 n.8. Although Oliver erroneously referred to the weapon as an "AK-47," she positively identified this assault rifle as the weapon that Adams pointed at her. *Id.* at 4 n.7, citing N.T. Nonjury Trial, 7/12/22, at 13-15.

Adams also testified at trial and admitted to being present and involved in both altercations between the families. *See* N.T. Nonjury Trial, 7/12/22, at 84-85. However, he testified that he was the peacemaker during the situation. *See id.* at 84 (Adams testifying, "I was tryin' to be their med[iator]. . . I was tryin' to break it up[.]"). Similar to Oliver's testimony regarding the events of June 1, 2021, Adams testified that he knocked on Oliver's door, asked for his phone, and, when Oliver left her house, Adams, his wife, and his stepdaughter approached Oliver as she was walking to her car. *Id.* at 72-73. Adams testified that he was asking for his phone when Oliver stated, "If you don't get

_____

[6] Detective Gallagher testified that the two semiautomatic handguns were registered to Adams' wife, Aisha Shields, who had a license to carry a firearm. *See* Trial Court Opinion, 6/4/24, at 5 n.8, citing N.T. Nonjury Trial, 7/12/22, at 54-55.

out [of] my face, I'm gonna mace you." *Id.* at 73. He then testified that the next thing he remembered was that he was maced in the face. *Id.* Adams then retreated to his front porch, where someone applied milk to his face, and then the police arrived. *Id.* at 74-75. Adams testified that he did not have a gun during the interaction and that he did not live at 1715 South 30th Street, although he admitted to occasionally sleeping there. *Id.* at 73, 76-77, 86. Instead, Adams testified that he lived at 5211 Catherine Street, which is what he told police the day of the incident. *Id.* at 77. Adams then changed his testimony and claimed that he lived at 5420 Birch Street at the time of the altercation. *Id.* Finally, Adams testified that he had "no clue" that there were four guns in the 1715 South 30th Street house. *Id.* at 95-96.

Following Adams' conviction of the above-stated offenses, the court sentenced him on October 18, 2022, to an aggregate term of 11½ to 23 months' incarceration and a concurrent term of seven years' probation.[7] On January 31, 2023, Adams filed a *pro se* "reconsideration petition," claiming ineffective assistance of counsel at trial and sentencing hearing, which the court denied as untimely, on February 10, 2023.[8] *See* Appellant's First

_____

[7] On October 18, 2022, the trial court denied Adams' Motion for Extraordinary Relief. *See* Order, 10/18/22. This motion was made orally prior to sentencing; however, it does not appear to be in the record. *See* PCRA Hearing, 3/1/24, at 25.

[8] On February 25, 2023, Adams filed a *pro se* motion to modify and reduce sentence. Adams also filed two additional *pro se* motions on August 22, 2023: one to modify and reduce his sentence and another petition for
*(Footnote Continued Next Page)*

Reconsideration Petition, 1/31/23; *see also* Order, 2/10/23. On March 6, 2023, Adams filed a second *pro se* "reconsideration petition," restating the same claims of ineffective counsel he made in his first petition. The court denied the second petition on March 28, 2023, as untimely. *See* Order, 3/28/23.

On May 5, 2023, Adams filed a *pro se* Post Conviction Relief Act (PCRA)[9] petition, alleging ineffectiveness of counsel for failing to file a direct appeal. PCRA counsel was appointed, and on August 11, 2023, he filed an amended petition, requesting his appellate rights be reinstated *nunc pro tunc*. On March 1, 2024, the court held an evidentiary hearing on Adams' PCRA petition, and, on March 19, 2024, the court entered an order granting reinstatement of Adams' direct appellate rights and post-sentence motions *nunc pro tunc*. *See* Order, 3/19/24, at 1; *see also* N.T. PCRA Hearing, 3/1/24, at 26.[10] Adams did not file any post-sentence motions. On March 20, 2024, Adams filed a

_____

reconsideration. In our review of the record, it does not appear that the trial court ruled on these motions.

[9] *See* 42 Pa.C.S.A. §§ 9541-9546.

[10] At the PCRA hearing, the Commonwealth asked the trial court to include the ability to file post-sentence motions in their order to reinstate Adams' direct appeal rights *nun pro tunc* because, as of the PCRA hearing, "nothing [had been] preserved" for appeal. *See* PCRA Hearing, 3/1/24, at 26; *see also* ***Commonwealth v. Liston***, 977 A.2d 1089, 1094 (Pa. 2009) (order granting PCRA petitioner leave to file a notice of appeal *nunc pro tunc* does not automatically confer an additional right to file post-sentence motions *nunc pro tunc*).

timely notice of appeal. Both the trial court and Adams have complied with Pa.R.A.P. 1925.

On appeal, Adams raises the following issue for our review: "Was the evidence insufficient to convict [Adams] of the offenses where [] Adams retreated into his residence while an altercation was happening and [] Adams did not possess a firearm?" Appellant's Brief, at 3.[11]

This Court's standard of review of a challenge to the sufficiency of the evidence is well-settled:

> In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all

_____

[11] In Adams' Rule 1925(b) statement, in addition to his sufficiency claim, Adams asserts that he did not possess a firearm at the time of the altercation, that he was maced, and that a firearm was pulled on him. *See* Pa.R.A.P. 1925(b) Statement, 5/8/24, at ¶ 3. Further, Adams alleges he was not living at 1715 South 30th Street at the time of the incident. *Id.* at ¶ 4. Adams' statements on his firearm possession and residence at the time of the incidents seek to dispute the credibility of the evidence introduced by the Commonwealth in favor of Adams' own testimony. Thus, these claims go to the weight of the evidence, not the sufficiency of it. However, in failing to file a post-sentence motion, Adams has not properly preserved a weight of the evidence claim. *See* Pa.R.Crim.P. 607(A)(1)-(3) (claim challenging weight of evidence "shall be raised with the trial judge in a motion for a new trial: (1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion"). Additionally, Adams failed to ensure that the notes of testimony from his sentencing hearing were included in the certified record, so we are unable to confirm whether a weight claim was lodged at that proceeding. Finally, although he also challenges the credibility of Oliver's testimony throughout his brief, Adams raises only a sufficiency claim in his statement of questions presented. *See* Appellant's Brief, at 3. The failure to preserve a weight claim will result in waiver of that claim. *Commonwealth v. Barkman*, 295 A.2d 721, 736 (Pa. Super. 2023). Consequently, we find the weight of evidence claim waived.

reasonable inferences drawn therefrom, when viewed in the light most favorable to the [Commonwealth as the] verdict winner, are sufficient to support all elements of the offense. Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt.

***Commonwealth v. Koch***, 39 A.3d 996, 1001 (Pa. Super. 2011) (internal citations omitted). Any question of doubt is to be resolved by the factfinder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances. ***See***

***Commonwealth v. Franklin***, 69 A.3d 719, 722 (Pa. Super. 2013).

Adams argues that the evidence was insufficient to convict him of any of the charges because the testimony of Oliver, the complaining witness, and the discovery of the firearm at 1715 South 30th Street were insufficient to prove he possessed a firearm. ***See*** Appellant's Brief, at 19-22. Specifically, Adams argues that the evidence was insufficient to prove he was in actual or constructive possession of a firearm because the firearm was not found on his person, and there is no evidence linking the firearm discovered in his residence to the incident.[12] ***See*** Appellant's Brief, at 21. He also argues that the "mere discovery" of a firearm inside a defendant's residence, without any other

---

[12] At trial and at one point in his brief, Adams argues that he was not living at 1715 South 30th Street, the location where the firearms were recovered by the police. ***See*** N.T. Nonjury Trial, 7/12/22, at 86-87; ***see also*** Appellant's Brief, at 20. However, at other places in his brief, Adams states that 1715 South 30th Street is "his home" and "[his] residence." Appellant's Brief, at 20, 21. For purposes of our analysis, we assume that Adams resides at 1715 South 30th Street, as he repeatedly indicates in his brief.

evidence linking the firearm to the incident, fails to establish the defendant possessed or used the firearm in the altercation. *Id.* at 22. Additionally, Adams contends that Oliver's testimony is insufficient to establish his possession of a firearm because her testimony was contrary to his own testimony. *Id.* at 21-22. Specifically, as to his REAP conviction, Adams posits that there is a "lack of evidence" that he possessed or used a firearm. *Id.* at 23.

Primarily, this Court notes that a sufficiency of the evidence review does not include an assessment of the credibility of testimony offered by the Commonwealth. *Commonwealth v. Wilson*, 825 A.2d 710, 713-14 (Pa. Super. 2003). A mere conflict in the testimony of the witnesses does not render the evidence insufficient because "it is within the province of the fact finder to determine the weight to be given to the testimony and to believe all, part, or none of the evidence." *Commonwealth v. Rabold*, 920 A.2d 857, 859 (Pa. Super. 2007) (citations omitted). In fact, "variances in testimony go[] to the credibility of the witness and not the sufficiency of the evidence" and is irrelevant in our sufficiency analysis. *Commonwealth v. Galloway*, 434 A.2d 1220, 1222 (Pa. 1981). Thus, for purposes of his sufficiency argument, it is of no moment that Oliver's testimony contradicted Adams' own testimony. To the extent that Adams challenges the sufficiency of the evidence, we review such argument on the merits below.

The relevant portion of the statute for persons not to possess a firearm is as follows: "A person who has been convicted of an offense enumerated in

[this statute] or whose conduct meets the criteria in [this statute] shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth."[13]  18 Pa.C.S.A. § 6105(a)(1).

Furthermore, "a person commits [REAP,] a misdemeanor of the second degree[,] if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury."  18 Pa.C.S.A. § 2705.

Possession of a firearm may be established "by proving actual possession, constructive possession, or joint constructive possession." **Commonwealth v. Parrish**, 191 A.3d 31, 36 (Pa. Super. 2018) (citation and quotation marks omitted).  Further, the testimony of one witness, alone, is sufficient to establish that a defendant actually possessed a firearm at the time of the commission of the crime.  **See Commonwealth v. Antidormi**, 84 A.3d 736, 756-57 (Pa. Super. 2014).  "'Constructive possession' is found where the individual does not have actual possession over the illegal item but has conscious dominion over it."  **Commonwealth v. Heidler**, 741 A.2d 213, 215-16 (Pa. Super. 1999) (en banc).

_____

[13] Evidence offered at trial established that Adams is prohibited from possessing a firearm under section 6105 because of a prior conviction of an enumerated offense.  **See** N.T. Nonjury Trial, at 61, 73, 86 (counsel stipulated Adams was ineligible to possess a firearm); **see also** Commonwealth Ex. 12 (court summary that Adams pled guilty to aggravated assault prior to this case).  Therefore, we do not address the other statutory elements necessary to sustain Adams' conviction under sections 6105.

Here, there was sufficient evidence to establish Adams possessed a firearm. Both Oliver and Adams testified that Adams was at 1715 South 30th Street on the day of the incident. **See** N.T. Nonjury Trial, at 17, 87. At trial, Oliver testified that Adams, his wife, and his stepdaughter surrounded her car when she and her sister were trying to leave the neighborhood in her car. **Id.** at 12-13. Oliver testified that Adams pulled a big gun from behind him and directly pointed it at her and said "Bitch, do something now." **Id.** at 13, 18. Oliver also described the gun Adams held as "a long gun [with] a clip in the back of it. Like, a handle in the back, a handle in the front." **Id.** at 13. During the execution of a search warrant, an assault rifle was recovered in the kitchen of 1715 South 30th Street. **Id.** at 50. When shown a picture of the gun recovered at 1715 South 30th Street, Oliver identified it as the same gun Adams held during the incident on June 1, 2021. **Id.** at 13-15; **see also** Commonwealth Ex. C-1A. Oliver's testimony alone is sufficient to prove actual possession. **Antidormi**, 84 A.3d at 756-757. Further, contrary to Adams' claims, constructive possession is not relevant here because the Commonwealth adduced sufficient evidence of Adams' actual possession of a firearm at the time of the incident. Viewing the aforesaid testimony in a light most favorable to the Commonwealth as the verdict winner, we conclude that there was sufficient evidence presented that Adams was in possession of a firearm.

As to his REAP conviction, Adams argues that Oliver's testimony was uncorroborated by any physical evidence or independent witness testimony

and, therefore, fails to prove his conduct placed Oliver in danger of serious bodily harm. *See* Appellant's Brief, at 22. He also posits that his retreat to his porch after being maced by Oliver does not constitute reckless behavior that endangers another person. *Id.* We disagree.

To sustain a REAP conviction, the Commonwealth must prove that the defendant had an "actual present ability to inflict harm." *Commonwealth v. Reynolds*, 835 A.2d 720, 728 (Pa. Super. 2003) (citation omitted). Danger, not merely the apprehension of danger, must be created. *Commonwealth v. Martuscelli*, 54 A.3d 940, 949 (Pa. Super. 2012).

Contrary to Adams' claim, the uncorroborated testimony of a single witness is sufficient to sustain a conviction for a criminal offense, so long as that testimony addresses every element of the crime charged. *Commonwealth v. Johnson*, 180 A.3d 474, 479 (Pa. Super. 2018). Here, Oliver's testimony addressed Adams' possession of the firearm, that he pointed it at her, and threatened her. *See* N.T. Nonjury Trial, 7/12/22, at 8-9, 13, 16, 20-24 (Oliver testifying that, while pointing a large gun at her, Adams said, "Bitch, do something now" and "I got bail money. I got lawyer money. I got Janazah [funeral] money. Whichever way you want to do [it], that's how we're gonna do it."). A person may be convicted of REAP when there is sufficient evidence that the victim was in actual danger from a pointed gun, regardless of if it is loaded, and the perpetrator was capable of inflicting actual harm. *See Commonwealth v. Rivera*, 503 A.2d 11, 13-14 (Pa. Super. 1985). Adams cornered Oliver at her car after two days of escalating

altercations between Adams, his family, and Oliver and pointed a large firearm at Oliver's face while threatening her. *See* N.T. Nonjury Trial, 7/12/22, at 8-9, 13, 16, 20-24. We conclude the Commonwealth presented sufficient evidence to allow the factfinder to reasonably infer that Adams had the actual present ability to inflict great bodily harm on Oliver. Finally, Adams' assertion that his retreat to the porch after being maced did not constitute reckless behavior is similarly meritless. Although Adams did run to his porch after being maced, he was maced **after** he pointed an assault rifle at Oliver and threatened her. *Id.* at 26, 38, 74. Therefore, there is sufficient evidence to sustain Adams' REAP conviction.

Next, Adams posits that his PIC conviction must be vacated if there is insufficient evidence to prove he possessed a firearm. Appellant's Brief, at 23.

"A person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally." 18 Pa.C.S.A. § 907(a). Because we have already found there was sufficient evidence to prove Adams possessed a firearm, this claim has no merit. *See* N.T. Nonjury Trial, 7/12/22, at 13, 18; *see also id.* at 16 (Oliver testifying Adams used assault rifle to threaten her).

Finally, Adams asserts that because he retreated from the scene, the convictions for terroristic threats and simple assault must also be vacated. *See* Appellant's Brief, at 23. However, Adams does not further discuss the elements of these crimes or provide meaningful arguments for the

insufficiency of evidence for either conviction. Thus, we find those claims waived.[14] **See Commonwealth v. Sipps**, 225 A.3d 1110, 1116-17 (Pa. Super. 2019) (where appellant fails to develop issue in argument section of brief and fails to cite legal authority, issue is waived); **see also** Pa.R.A.P. 2119(a).

Judgment of sentence affirmed.

_____

[14] Even if we did not find these claims waived, there is sufficient evidence to sustain Adams' convictions of terroristic threats and simple assault. "A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to. . . commit any crime of violence with intent to terrorize another." 18 Pa.C.S.A. § 2706(a)(1). Here, we agree with the trial court, who opined: "Applying the [evidence discussed, *infra*], [Adams] threatened [] Oliver [while pointing an assault rifle at her face], and there is no question, given the surrounding circumstances of the statement, that the threat was communicated with the intent to terrorize her." Trial Court Opinion, 6/4/24, at 13.

Further, we agree with the trial court's analysis of Adams' conviction of simple assault, that deems "[a] person [] guilty of assault if he. . . attempts by physical menace to put another in fear of imminent serious bodily injury[.]" 18 Pa.C.S.A. § 2701(a)(3).

> "The Commonwealth need not establish the victim actually suffered bodily injury [in a simple assault conviction]; rather, it is sufficient to support a conviction if the Commonwealth establishes an attempt to inflict bodily injury." **Commonwealth v. Martuscelli**, 54 A.3d 940, 948 (Pa. Super. 2012) (citation omitted). A person also commits simple assault if he or she "attempts by physical menace to put another in fear of imminent serious bodily injury." 18 Pa.C.S.[A.] § 2701(a)(3). As applied in this context, "physical menace" includes pushing, shoving, and other forms of physical force or threat. Here, the evidence established that [Adams] pointed an assault rifle at [] Oliver's face while threatening her. His actions clearly constituted an attempt to put another in fear of serious bodily injury[.]

Trial Court Opinion, 6/4/24, at 13-14.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 7/7/2025